The STATE of Texas and the Texas Department of Transportation, Petitioners,

v.

George M. DELANY and Patricia Ann Delany, Respondents.

No. 04–0628.

Supreme Court of Texas.

April 28, 2006.

Rehearing Denied Aug. 25, 2006.

Susan Desmarais Bonnen, Greg Abbott, Atty. Gen., Barry Ross McBee, Edward D. Burbach, Grady Click, Cavitt Wendlandt, Lisa M. Nieman, Austin, for Petitioners.

Billy Coe Dyer, H. Dixon Montague, Catherine B. Smith, Vinson & Elkins, L.L.P., Houston, for Respondents.

PER CURIAM.

In this inverse condemnation case, the owner of raw land recovered a judgment for 90 percent of the property's value based on alleged impairment of access. A few months after the court of appeals affirmed, we held in *County of Bexar v. Santikos* that when a tract has "no businesses, homes, driveways, or other improvements of any kind," an impairment claim cannot be sustained on the basis that "someday a developer might want to build a driveway at the single most difficult and expensive location on the entire property." 144 S.W.3d 455, 460–61 (Tex.2004). Based on·that reasoning, we reverse the portion of the court of appeals' judgment that affirmed the impairment claim here.

In 1947, the State of Texas acquired 29.57 acres in Galveston County from the predecessors of George and Patricia Delany for the construction of Interstate Highway 45. Originally, I–45 intersected a nearby road called Johnny Palmer Road at grade level. By 1965 the State began constructing an overpass for Johnny Palmer Road at the intersection. For this project the State condemned an additional 5.733 acre tract, known as Parcel 9, from the Delanys' predecessors. Parcel 9, which abuts the northbound frontage road of I–45, was acquired for the overpass itself, as well as accompanying drainage facilities, an embankment, a park-and-ride lot, and an exit referred to by the parties as the Connector Road. This road skirted the eastern edge of Parcel 9 in a bell-shaped curve, connecting the I–45 northbound frontage road with Johnny Palmer Road.

In its 1965 Petition for Condemnation of Parcel 9, the State pleaded that

> Plaintiff, in the exercise of the police power for the preservation of human life and safety, and under existing laws, has designated said highway as a Controlled Access Highway, and roads are to be built as a part of said highway whereby the right of ingress and egress to or from the remaining property of defendants abutting on said highway is not to be denied.

The Delany Property consists of 3.48 acres of the "remaining property" and abuts the eastern edge of Parcel 9. The Delany Property remains undeveloped and is presently used as grazing land; no driveways were ever constructed to join it to the adjacent Connector Road.

In 1998 the State demolished the Connector Road for safety reasons. Following this removal, the Delany Property continued to abut Parcel 9, but no longer directly abutted any public road. The nearest remaining road to the Delany Property is the northbound frontage road of I–45, from which it is separated by the now roadless Parcel 9. Nevertheless, the State contends the Delanys retain reasonable access to the northbound frontage road because they are entitled to request, and the State would be obligated to grant, driveway access across Parcel 9.

The Delanys sued the State for inverse condemnation, arguing the removal of the Connector Road resulted in substantial and material impairment of access to their

property, a compensable taking under the Texas Constitution. Experts for the State and the Delanys agreed the property value of their land before the removal of the Connector Road was $2.50 per square foot; the Delanys presented evidence that the property value following removal, assuming access was unavailable, was $.25 per square foot.

The trial court found that the Delanys had an easement of access to the Connector Road that was destroyed by its removal. Finding that the State had "abandoned" Parcel 9, the court found that the Delany Property was landlocked, and that alternatively any proposed driveways across it would be unsafe. The trial court awarded as damages $341,075—90 percent of the value of the land—and, after prejudgment interest and $5,000 in sanctions, a total of $497,637.80.

In this appeal,[1] the Fourteenth Court of Appeals affirmed the trial court, holding: (1) the Delanys had a "vested easement of access" to the Connector Road that could not be removed without compensation; (2) the Delanys had no remaining access to the I–45 frontage road because Parcel 9 had been abandoned; and (3) even if they did have access, it would be unsafe and dangerous. 149 S.W.3d 655 (Tex.App.-Houston [14th Dist.] 2004). Two members of the Court dissented from the denial of rehearing en banc.

■ Texas has long recognized that property abutting a public road has an appurtenant easement of access guaranteeing ingress to and egress from the property. See State v. Heal, 917 S.W.2d 6, 9 (Tex.1996); DuPuy v. City of Waco, 396 S.W.2d 103, 109 (Tex.1965). Under the Texas Constitution, a compensable taking has occurred if the State materially and substantially impairs access to such property. See Santikos, 144 S.W.3d at 460.

■ The Delanys first argue their property, abutting the Connector Road, had such an easement guaranteeing access to that specific road. We disagree. In Texas, easements of access do not guarantee access to any specific road absent a specific grant. See City of Houston v. Fox, 444 S.W.2d 591, 592–93 (Tex.1969); Archenhold Auto. Supply Co. v. City of Waco, 396 S.W.2d 111, 114 (Tex.1965).

■ The Delanys next argue the 1965 Petition for Condemnation granted them access to a specific road. Petitions for condemnation can preserve easements of access for the remaining property of those owners whose land has been condemned. See State v. Frost, 456 S.W.2d 245, 249, 255 (Tex.Civ.App.-Houston [14th Dist.] 1970, writ ref'd n.r.e.); see also Coastal Indus. Water Auth. v. Celanese Corp. of Am., 592 S.W.2d 597, 602 (Tex.1979). However, the 1965 Petition only stated that "roads are to be built as a part of said highway whereby the right of ingress and egress to or from the remaining property of defendants abutting on said highway is not to be denied." Plainly this language only preserves general access to I–45 ("said highway") and did not grant anything more specific. Thus, by virtue of the 1965 Petition, the Delanys possess a general easement of access, and not one specific to the Connector Road. As a consequence, we need not consider whether the State abandoned Parcel 9 for highway purposes or whether the Delany Property continues to abut a road; the Delanys have a general easement regardless.

---

1. During the trial, the State argued on interlocutory appeal that the Delany claims were not ripe because the State had not yet denied these driveway permits; the First Court of Appeals rejected this argument. See State Dept. of Transp. v. Delany, 2001 WL 493110 (Tex.App.-Houston [1st Dist.] 2001, pet. dism'd w.o.j.).

300

That said, the Delanys would be entitled to compensation if the removal of the Connector Road substantially and materially impaired access to their property. That is a question of law that we review *de novo*. *Santikos*, 144 S.W.3d at 459, 460.

The evidence at trial focused on two proposed driveways that might connect the north and south ends of the Delany Property to the I–45 frontage road— one about 240 feet long, and the other about 580 feet long. The trial court found the proposed driveways left "the property with an unsuitable means of access to serve its intended purpose or highest and best use." The intended purpose, the trial court found, was unspecified "commercial." But while condemned property may be appraised at its highest and best use, *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 626 (Tex.2002), remaining property on which there are no improvements and to which reasonable access remains, is not damaged simply because hypothetical development plans may have to be modified. *Santikos*, 144 S.W.3d at 460–61.

The Delanys are entitled only to reasonable access, not the most expansive or expensive access their planners might design. *Id.* at 461. While the Delanys' expert testified that two separate driveways across Parcel 9 would require sharp turns and removal of a guardrail, nothing in the record establishes that reasonable access required these two separate driveways. *See Archenhold*, 396 S.W.2d at 114 ("one of two public streets may be closed without compensation to an abutting landowner if the remaining street furnishes suitable means of access"). As a driveway could be constructed precisely where the Connector Road once ran to the property, getting to it would be no more difficult along that route than it was before. Further, nothing suggests that an exiting driveway could not be safely constructed on the remaining several acres of flat land.

We agree that a different question would be presented if the State refused to acknowledge the Delanys were entitled to an easement providing safe and reasonable access to their property. But the State concedes it is bound to grant them a driveway permit, a claim that remains undisputed as the Delanys have never requested one. Accordingly, the Delanys have not, as a matter of law, suffered material and substantial impairment of access to their property.

The remainder of the State's petition does not demonstrate that the court of appeals committed any other error of law. *See* Tex. Gov't Code § 22.001. Accordingly, we grant the State's petition for review and without hearing oral argument, Tex. R. App. P. 59.1, reverse the court of appeals' judgment granting the Delanys relief for impaired access and render a take nothing judgment as to that portion only.