The STATE of Texas, Petitioner,

v.

DAWMAR PARTNERS, LTD., A Texas Limited Partnership, and Howard Wayne Gruetzner and Beverly Ann Gruetzner (a/k/a Beverly G. Shaw), Co–Independent Executors of the Estate of Martha Lillian Attaway Gruetzner (a/k/a Martha Lillian Attaway Gruetsner), Respondents.

No. 07–0548.

Supreme Court of Texas.

Sept. 26, 2008.

---

Greg Abbott, Attorney General of State of Texas, Kent C. Sullivan, First Assistant Attorney General, David S. Morales, Kristina Weber Silcocks, Susan Desmarais Bonnen, John L. Ritts, Sherry L. Peel, Office of the Attorney General, Austin, TX, for Petitioner.

Philip E. McCleery, Sheehy Lovelace & Mayfield, P.C., Waco, TX, Stephen E. McCleery, McCleery Law Firm, Houston, TX, for Respondents.

PER CURIAM.

In this condemnation case, the State of Texas challenges both the amount awarded for land taken as part of a highway improvement project and the compensability of severance damages to the remainder. The principal issue is whether the landowners are entitled to severance damages resulting from permanent denial of direct access to the highway if the restrictions on access changed the "highest and best use" of the property from commercial to residential. We hold that the landowners are not entitled to compensation for diminished value of the remainder because they have not suffered a material and substantial impairment of access. We therefore reverse the portion of the court of appeals' judgment awarding severance damages and remand that claim to the trial court for further proceedings. The portion of the judgment awarding damages for the land taken is affirmed.

As part of a project to widen and elevate FM 1695, the State instituted condemnation proceedings to acquire approximately 12.89 acres of an unimproved 79.546 acre tract of land in Hewitt, Texas owned by Dawmar Partners, Ltd., LP and Howard Wayne and Beverly Ann Gruetzner, co-independent executors of the estate of Martha Lillian Attaway Gruetzner (collectively "the landowners").[1] The taking divided the larger tract into a 3.671 acre northern remainder and a 62.981 acre southern remainder, and the only dispute in the condemnation proceeding was the amount of compensation owed to the landowners for the land taken and damage to the southern remainder. The landowners sought severance damages to the southern remainder because safety concerns related to the highway project necessitated eliminating all direct access to FM 1695 and its frontage roads from that portion of the tract, which reportedly changed the highest and best use of the property from commercial use to residential use despite the existence and extent of direct access to two other public roads.

The landowners objected to the special commissioners' award of $267,000.00 for the taking and severance damages, and the case proceeded to trial. *See* TEX. PROP. CODE § 21.018(a). At trial, the highest and best use of the property before condemnation was the central issue and was hotly contested. The landowners introduced evidence that the highest and best use of the property was to hold it for subsequent commercial development. There was also evidence that the loss of direct access to FM 1695 made the remainder suitable only for residential development. Although there was considerable conflicting evidence regarding the highest and best use of the property before and after the taking, the salient facts about the condition of the property, the degree of impaired access, remaining access points, and the status of development plans were undisputed.

The State argued that (1) diminished value resulting exclusively from restrictions on access is not compensable unless access is materially and substantially impaired, (2) the landowners retain sufficient access to the remainder property and FM 1695 via two other public roads, and (3) expert testimony regarding the market value of the condemned land and damages to the remainder was unreliable. The trial court entered judgment on a jury verdict awarding $561,662.64 in damages for the condemned land and $402,616.80 in severance damages, and the court of appeals affirmed. 268 S.W.3d at 79.

1. While the condemnation petition was pending, Martha Lillian Attaway Gruetzner passed away, and her estate was substituted as a party.

The focus of this appeal is the compensability of severance damages. The landowners claim that the restrictions on access lowered the total value of the property by changing the highest and best use of a separate economic unit from commercial to residential. The arguments in favor of compensability, as we perceive them, are: (1) diminished value resulting from a change in a property's highest and best use is independently compensable or (2) an impairment of access that changes a property's highest and best use is necessarily material and substantial or (3) the reasonableness of access must be evaluated in light of a property's highest and best use.

■ We have long held that a change in a property's use due to condemnation is relevant to the fair market value of the property, but that does not mean all diminished value is compensable. *See County of Bexar v. Santikos,* 144 S.W.3d 455, 459 (Tex.2004) ("Damages to remainder property are generally calculated by the difference between the market value of the remainder property immediately before and after the condemnation, considering the nature of any improvements and the use of the land taken.") (citing references omitted). To the contrary, diminished value is compensable only when it derives from a constitutionally cognizable injury. *See Felts v. Harris County,* 915 S.W.2d 482, 484 (Tex.1996) (citing *State v. Schmidt,* 867 S.W.2d 769, 774 (Tex.1993)). The injury the landowners in this case have identified is a loss of value resulting exclusively from the denial of direct access to FM 1695 and its frontage roads.

■ It is well settled that *diminished value resulting from impaired access is compensable only when access is materially and substantially impaired. City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969). Whether access has been ma-

terially and substantially impaired is a threshold question of law reviewed *de novo. City of San Antonio v. TPLP Office Park Props., L.P.,* 218 S.W.3d 60, 66 (Tex. 2007) (citing *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996)).

■ The landowners apparently argue that access is materially and substantially impaired, as a matter of law, when loss of access changes the highest and best use of the property. If we were to accept this proposition, it would be a rare case in which a reduction of access would not have some impact on the value of property, and the "material and substantial" limitation would be effectively eliminated in the vast majority of cases, contrary to our body of impaired access law. *See, e.g., Schmidt,* 867 S.W.2d at 773–74; *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965); *Texland Corp.,* 446 S.W.2d at 2; *see also Heal,* 917 S.W.2d at 11 (absent a material and substantial impairment of access, the landowners were not entitled to compensation "even if the remainder of their property has lost some degree of value"). We reject an analysis that would effect such a result. This is not to say that a change in the highest and best use of property is irrelevant to the *amount* of damages, but the threshold legal issue that must be resolved before the jury can properly consider evidence of an alleged change in value is whether there has been a material and substantial impairment of access, a matter to which we now turn.

■ In determining whether diminished value due to impaired access is compensable, we first look to whether other access points remain after the taking and whether those access points are reasonable. *See, e.g., Archenhold,* 396 S.W.2d at 114 (holding that access was not materially and substantially impaired when one access

point was closed but another access point on a public street remained unaffected). The question presented by this case is *how* the remaining access should be evaluated. We have implicitly rejected the proposition that the degree of impairment of access must be evaluated in light of a property's highest and best use. *See City of Houston v. Fox*, 419 S.W.2d 819, 819–20 (Tex.1967) (reversing a court of appeals opinion that held: "It is our opinion that a material consideration in determining the [question] of reasonable access is the highest and best use of the property"); *see also Schmidt*, 867 S.W.2d at 774 (characterizing the Court's holding in *Fox* as having "rejected" highest and best use as a material consideration in an impairment of access inquiry). Moreover, we have typically analyzed remaining access in light of the actual or intended uses of remainder property as reflected by existing uses and improvements and applicable zoning. *See, e.g., Texland*, 446 S.W.2d at 4 (holding that access was impaired, even though normal access remained reasonably available, because access for which the property was specifically intended was rendered unreasonably deficient).

In contrast, we have rejected impairment of access claims based on speculative or hypothetical uses of remainder property. *See Santikos*, 144 S.W.3d at 460–61 (holding that access was not impaired simply because installing driveways in conjunction with hypothetical development plans of unimproved property would be more difficult and expensive after condemnation); *State v. Delany*, 197 S.W.3d 297, 300 (Tex.2006) (same). In *Santikos*, we held that the landowner could not recover severance damages based on "diminished market perception," reasoning that "noncompensable damages . . . cannot be trans-

muted to compensable ones by asserting them under a pseudonym." *Santikos*, 144 S.W.3d at 462. We then held that the landowner's characterization of its claim as one for " 'reduced physical adaptability' (i.e., development will be less extensive and more expensive)," was "immaterial" because "[t]he sole reason alleged for having to alter development plans is because of impaired access." *Id.* at 461. In terms of the remaining access, we held that the landowner could not recover damages because "it is hard to find any effects on access here, as the tract has no businesses, homes, driveways, or other improvements of any kind." *Id.* at 460.

We also rejected a similar claim for severance damages in another case involving diminished access to raw land. *Delany*, 197 S.W.3d at 300. In *Delany*, we held that "while condemned property may be appraised at its highest and best use, remaining property on which there are no improvements and to which reasonable access remains, is not damaged simply because hypothetical development plans may have to be modified." *Id.*(citation omitted); *see also Schmidt*, 867 S.W.2d at 773 (" 'Evidence [regarding severance damages] should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property.' ") (quoting *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 200 (Tex.1936)).

■ This case similarly lacks evidence of a material and substantial impairment of access. Although the southern remainder no longer has direct access to FM 1695 and its frontage roads, the remainder retains 2,165 feet of access to Old Ritchie Road and will acquire 1,827 feet of access to New Ritchie Road.[2] New Ritchie Road

---

2. In the record, the names of these roads are spelled both as "Richie" and "Ritchie". It is

unclear which is the correct spelling, but the City of Hewitt website uses the spelling we

is a two-lane road with a center turn lane, curbs, and gutters. Both roads are public roads that run virtually the entire length of the southern remainder, and both intersect FM 1695 at or near the point where the remainder fronts the highway. In addition, the property at issue is unimproved, and there is no evidence of existing driveways or drainage systems that would make access to the available roads impossible or impracticable. Furthermore, the property is zoned for residential use, and there is no evidence of a pending request for a zoning change, existing commercial development plans, or a contract for commercial use.

The restrictions on access in this case have resulted only in increased circuity of travel, which this Court has repeatedly held is not compensable. *See, e.g., State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). Moreover, we recently reaffirmed in *TPLP Office Park* that access is not materially and substantially impaired merely because other access points are significantly less convenient. 218 S.W.3d at 66–67 (holding that closure of the primary access point, which was used by eighty-percent of the tenants, did not impair access because at least six other points of ingress and egress remained, even though tenants had to travel an additional two miles to reach the property). Here, there are no existing structures to limit access to the more than 3,992 feet of access points along Old and New Ritchie Roads. In light of the considerable amount of remaining access to and from the property, we could not conclude that there is a material and substantial impairment of access in this case without imposing a requirement that there be some degree of direct access to the highway. While the degree of residual access to an arterial road was integral to our determinations in *Santikos* and *Delany* that access was not materially and substantially impaired, we neither held nor implied that lack of access to an arterial road established impairment of access as a matter of law. We decline to impose such a requirement because it would be inconsistent with our well-developed case law regarding circuity of travel.

For the foregoing reasons, we conclude that access to the southern remainder is not materially and substantially impaired and the landowners are not entitled to severance damages as a matter of law. It was therefore error to allow evidence of diminished value to the remainder resulting from a change in the property's highest and best use. We need not consider in this case the extent to which remaining access can ever be properly evaluated in light of reasonably foreseeable future uses because any future commercial development of the southern remainder is purely speculative. *Cf. Santikos,* 144 S.W.3d at 461 (noting that "[t]his case might be quite different if driveways or other improvements were in place"); *State v. Allen,* 870 S.W.2d 1, 2 (Tex.1994) ("[A] change in the best use due to [a] taking can create compensable damages to the remainder in some cases . . . ."); *cf. also* 4A JULIUS L. SACKMAN, NICHOLS ON EMINENT DOMAIN § 14.02[2][b][ii], at 14–10 (3d ed. 2004) ("The determination of the highest and best use . . . considers 'the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably foreseeable future.'" (quoting *Olson v. U.S.,* 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934))).

have adopted in this opinion. *See* http://www.cityofhewitt.com (accessed September 23, 2008).

The State also challenges the amount awarded for the land taken, arguing that two of the landowners' witnesses, Randy Reid and Howard Gruetzner, were not qualified to offer opinions on its value. The State contends that the erroneous admission of this testimony probably caused the rendition of an improper judgment as evidenced by the fact that the jury awarded the same amount to which these witnesses testified. *See* Tex.R.App. P. 61.1(a)(1). We conclude that Reid's and Gruetzner's testimony was cumulative of substantially similar evidence from another expert, David Bolton, whose testimony has not been challenged on appeal. *Cf.* Tex. R.App. P. 53.2(f). Therefore, any error in admitting Reid's and Gruetzner's testimony was harmless. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989) ("The erroneous admission of testimony that is merely cumulative of properly admitted testimony is harmless error.").

Because the jury's award included noncompensable damages to the remainder, the State argues that we must remand the entire case for a new trial. *See Interstate Northborough P'Ship v. State*, 66 S.W.3d 213, 220 (Tex.2001) ("When a condemnation-damages award is based on evidence of both compensable and noncompensable injuries, the harmed party is entitled to a new trial."). In this case, however, the compensation questions submitted to the jury were segregated between the compensable and noncompensable damages. As a result, a new trial is not necessary to remedy the erroneous award of severance damages. *Cf. id.* at 218 (noting that the jury answered only a single damages question); *cf. also Santikos*, 144 S.W.3d at 458, 464 (suggesting that the jury answered a single broad-form damages issue). However, because the State seeks only a remand from this Court, we must remand the severance damages issue to the trial court even though the record would otherwise support a rendition of a judgment in the State's favor on that claim. *See State v. Heal*, 917 S.W.2d 6, 11 n. 2 (Tex.1996).

Accordingly, without hearing oral argument, we affirm the portion of the judgment awarding compensation for the condemned land, but we reverse the portion of the judgment awarding severance damages and remand that part of the case to the trial court for further proceedings consistent with this opinion. *See* Tex.R.App. P. 59.1.