The STATE of Texas, Petitioner,

v.

BRISTOL HOTEL ASSET
CO., Respondent.

No. 07–0896.

Supreme Court of Texas.

May 15, 2009.

Rehearing Denied Aug. 21, 2009.

Greg W. Abbott, Attorney General of Texas, Kent C. Sullivan, First Assistant Attorney General, David S. Morales, Kristina Weber Silcocks, Susan Desmarais Bonnen, Christopher Charles Gunter, Office of the Attorney General of Texas, Bonnie C. Lockhart, Assistant Attorney General, Austin, TX, for Petitioner.

Sue Wall, John N. McClish, Womack, McClish, Wall & Foster, P.C., Austin, TX, for Respondent.

PER CURIAM.

In this condemnation case, the State of Texas challenges the damages awarded to Bristol Hotel Asset Company. Because the trial court admitted evidence of non-compensable damages, we remand the case for a new trial.

In order to widen part of Loop 410 in San Antonio, the State condemned 0.107 acres of a 5.003–acre hotel property owned by Bristol near the airport. Before the taking, the hotel had three entrance driveways: an eastern driveway with a very steep grade, a center main driveway that was also fairly steep and led to the hotel's porte cochere, and a western driveway with a flat, two-way drive. The State's taking shortened the length of the eastern and center driveways, making them so steep as to be unusable.

Two engineers testified regarding modification projects required to restore the hotel's driveways to functioning condition. While the eastern driveway could be re-graded and cured, the center driveway, the hotel's primary entry point, was permanently lost. Therefore, the engineers' plan was to convert the western driveway into the hotel's primary driveway entrance. The hotel also had two service drives at the rear of the hotel that would remain unchanged.

The engineers estimated that the driveway reconstruction project would take six months. During the four-month western driveway phase, eighty of the hotel's 380 parking spaces would be unavailable. During the two-month eastern driveway phase, forty-three spaces would be unavailable.

David Bolton testified as the hotel's valuation expert. Using an income method of valuation, he calculated that the difference in market value between the entire hotel property before the taking and the remainder property after the taking was $1.26 million. He also testified that Bristol sustained $509,211 in damages as the cost to make necessary driveway modifications to the remainder property. Bolton's testimony and his summary appraisal report, admitted into evidence, also noted that Bristol had suffered $723,492 in "temporary damages," which Bolton described to the jury as "temporary damages for the parking spaces being out of service." The State objected to Bolton's valuation of the remainder property, and also to the $723,492 in temporary damages. The jury found a $1.26 million difference in value between the property before the taking and the remainder property after the taking. The trial court rendered judgment for Bristol on the jury's verdict, and the court of appeals affirmed. 293 S.W.3d 211.

■ First, the State challenges Bolton's testimony regarding temporary damages. We agree that this testimony was flawed. The Property Code instructs that a condemnation proceeding should consider "the effect of the condemnation on the value of the property owner's remaining property." Tex. Prop.Code § 21.042(c). However, when a taking occurs, all damages associated with the taking are not necessarily compensable, *County of Bexar v. Santikos,* 144 S.W.3d 455, 459 (Tex.2004), and "diminished value is compensable only when it derives from a constitutionally cognizable injury," *State v. Dawmar Partners, Ltd.,* 267 S.W.3d 875, 878 (Tex.2008) (per curiam). Compensability for a particular type of condemnation damage is a question of law the Court reviews de novo. *Santikos,* 144 S.W.3d at 459.

■ Remainder property damages "are generally calculated by the difference between the market value of the remainder property immediately before and after the condemnation, considering the nature of any improvements and the use of the land taken." *Id.* While various methods can be used to determine the market value of a remainder property, the income approach is especially appropriate when, as with the hotel here, property would be valued on the open market according to the amount of income it already generates. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 183 (Tex.2001). The income approach consists of estimating the net operating income stream of a property and applying a capitalization rate to determine the property's present value. *Id.*

Using the income approach, Bolton arrived at a fair market value of the remainder tract. But his testimony and his appraisal report also included the $723,492 he calculated as temporary damages for loss of use of some parking spaces. To reach this figure, Bolton assigned a net income to each space by taking the total hotel revenue, deducting certain expenses, and calculating the net income per space per month. Using this figure he calculated damages for the temporary loss of forty-three spaces during the eastern driveway phase of the reconstruction and eighty spaces during the western driveway phase. Bristol's own brief describes Bolton's calculation as a loss of "net income" attributable to the loss of parking spaces during the reconstruction. Bristol, therefore, of-

fered evidence of lost profits to establish its claimed temporary damages.

■ We have held that lost profits or injury to a business are not compensable over and above the value of the land taken and the diminution in the value of the remainder tract. *State v. Travis*, 722 S.W.2d 698, 698–99 (Tex.1987) (per curiam); *City of Dallas v. Priolo*, 150 Tex. 423, 242 S.W.2d 176, 179 (1951). To the extent the temporary loss of parking spaces resulted in a temporary loss of business revenues or profits, those losses are not compensable.

Further, to the extent that the taking affected access to the remainder property, we have held that a partial, temporary disruption of access is not sufficiently "material and substantial" to constitute a compensable taking. *City of Austin v. The Avenue Corp.*, 704 S.W.2d 11, 13 (Tex. 1986). We have also held that "disruption of use due to construction activities" of the condemning authority during a roadway expansion project are not compensable. *State v. Schmidt*, 867 S.W.2d 769, 777 (Tex.1993). We similarly hold today that the partial, temporary loss of some parking spaces on Bristol's remainder property was not sufficiently material and substantial to qualify as compensable condemnation damages. Bristol never came close to losing all use of the remainder property, as occurred in *City of Austin v. Teague*, a case on which Bristol relies. 570 S.W.2d 389, 394 (Tex.1978) (recognizing loss of rentals as appropriate measure of temporary damages where "plaintiffs lost all use of their land" and city had in effect acquired a scenic easement on plaintiffs' land at no cost).

Bristol argues that the temporary damages were "properly considered in estimating the damages sustained by the landowner in a temporary or partial taking to arrive at the ultimate issue of diminution in the market value of the remainder." Bolton offered some testimony that the temporary damages were integrated into the calculation of the diminution in market value of the remainder property. For example, he agreed that in "the surreal world of condemnation," the temporary loss of parking spaces would affect what a buyer would pay for the property. But his testimony and report also treated the loss of parking spaces as a separate item of lost net income. Whether treated as a separate item of temporary lost business revenues or profits, or as part of the calculation of fair market value of the remainder property, Bristol asked the jury to include in its assessment of damages the partial, temporary loss of parking spaces, a loss that is not compensable as a matter of law.

Second, the state challenges Bolton's testimony regarding permanent damages. We agree that this testimony was flawed, too, as Bolton's permanent-damages testimony was based on diminished access to the remainder property that is not compensable. In determining the permanent diminution in value to the remainder hotel property as compared to the pre-condemnation property, Bolton testified that assuming the revenue stream to the hotel was the same before and after the taking, the discount or capitalization rate used in the present value calculation under the income approach should be increased to reflect a higher degree of risk that potential investors would perceive as a result of the condemnation. In other words, Bolton believed that investors would view the remainder tract as a riskier investment than the original hotel property. Assigning a higher capitalization rate to reflect this higher risk led Bolton to calculate a value for the remainder tract that was lower than the value of the original tract, even though the net revenue stream to the property remained the same.

In explaining why he applied a higher capitalization rate to the remainder property than to the original property, Bolton testified that he increased it primarily because of the loss of the center driveway. He pointed out that patrons would now have to make a ninety-degree turn from one of the remaining driveways to enter the new porte cochere, that there would be some interruption in "traffic patterns," and that new "site circulation characteristics" of the hotel would be atypical. Bolton's summary appraisal report likewise assigned a higher risk to the property in part because of diminished access resulting from the loss of the center driveway. Although the hotel lost one driveway, it remained reasonably accessible because it retained two other driveways fronting the hotel and modified to provide adequate access for patrons, as well as two service driveways in the rear. Bolton's appraisal summary assumed that net income to the hotel before and after the taking would be the same, further confirming that reasonable access to the property would remain after the driveway modifications were completed.

 This testimony was improper because, in picking a capitalization rate, Bolton primarily considered the diminished ease of access to the property, a loss that is not compensable. We have held in analogous circumstances that diminished access to a landowner's remaining property is not compensable so long as reasonable access to the property remains. See *Santikos,* 144 S.W.3d at 460–61 (stating that diminished access to remainder property, including loss of access resulting in lost driveways or requiring "increased circuity of travel" is not compensable so long as reasonable access to the remainder property remains); *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965). Generally, "a landowner is entitled to compensation when a public improvement destroys all reasonable access" to his property, but "no right to compensation extends to a property owner who has reasonable access to property after the construction of the public improvement." *State v. Heal,* 917 S.W.2d 6, 9–10 (Tex. 1996). In this case, the hotel lost its center driveway but four driveways remained, as described above. In *Interstate Northborough Partnership v. State,* we held as a matter of law that a commercial property's loss of one driveway while four other driveways remained was not a sufficiently material and substantial impairment of access to be a compensable loss. 66 S.W.3d 213, 224 (Tex.2001).

 "It is well settled that damages to a condemnee's business which result merely from traffic being required to travel a more circuitous route to reach a condemnee's property are not compensable." *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). The same rule applies where the alleged decline in market value is due to a more circuitous route within the remainder property, from the access road to the condemnee's front door. See *Santikos,* 144 S.W.3d at 460 ("circuity of travel *within* a particular property is [no] more compensable than circuity of travel *around* it") (emphasis in original). "[A]ccess is not materially and substantially impaired merely because other access points are significantly less convenient." *Dawmar Partners,* 267 S.W.3d at 880.

 Although couching his testimony in terms of the effect on "risk" and the capitalization rate from an investor standpoint, Bolton considered the diminished ease of access to the remainder property, a factor that is not compensable. If the alleged damage to the property is based on a partial loss of access, the landowner cannot transform such a noncompensable loss into

a compensable one by recasting it as a change in the capitalization rate. *See Dawmar Partners,* 267 S.W.3d at 879–80 (holding that landowner cannot recover for loss of access by framing it as a change in the "highest and best use"); *Santikos,* 144 S.W.3d at 462 (expert testimony couching loss in terms of "diminished market perception" does not make loss compensable when investor perception is based on noncompensable losses such as diminished access or diminished visibility).

In condemnation cases, the trial court must first determine if claimed damages are compensable, and admit evidence accordingly. *Interstate Northborough,* 66 S.W.3d at 220. If the damage award "is based on evidence of both compensable and noncompensable injuries, the harmed party is entitled to a new trial." *Id.* The jury in this case heard inadmissible evidence of temporary and permanent damages. Accordingly, and without hearing oral argument, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial on condemnation damages. *See* Tex.R.App. P. 59.1.