**Opinion issued April 16, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00217-CV

————————————

**AGBOLADE O. ODUTAYO AND BONITA ODUTAYO, Appellants**

**V.**

**CITY OF HOUSTON, Appellee**

---

**On Appeal from County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 983641**

---

## MEMORANDUM OPINION

Agbolade O. Odutayo and Bonita Odutayo appeal the trial court's grant of the City of Houston's plea to the jurisdiction on the Odutayo's inverse condemnation claim. On appeal, the Odutayos argue in three issues that the trial

court erred by granting the plea to the jurisdiction and, alternatively, that they should have been allowed the opportunity to replead.

We affirm.

## Background

At some point before January 27, 2009, the Odutayos acquired an undeveloped two-acre piece of land located on Almeda Road in Houston, Texas. Almeda Road is a state-owned roadway. The area of Almeda Road where the Odutayos' property is located has drainage ditches running along the side of the road. These ditches are also owned by the State of Texas.

The Odutayos intended to develop the property to be a car dealership. To that end, on January 27, 2009, the Odutayos applied to the City of Houston Public Works and Engineering Department for "storm drainage, sewer, and waste water availability." The Public Works and Engineering Department responded on February 2, 2009 acknowledging the application. The letter stated that the property was located in the Sims Bayou watershed and that approval by the Harris County Flood Control District was required. It also stated that a copy of the letter was required to be attached to their construction plans when applying for a building permit.

In a one-sentence paragraph, the letter also stated, "Please note, fill exceeding one (1) foot in height above natural grade requires a grading permit in

2

compliance with appendix E, 2000 International Building Code, unless exempted by Section E103.2." The Odutayos interpreted this sentence to mean that they could immediately start adding earth—or "fill"—to the property without obtaining any permits as long as the property was not raised more than one foot above natural grade. Accordingly, the Odutayos extended a pre-existing driveway along the drainage ditch by about six feet and began bringing truckloads of dirt onto the property.

When it became aware of this activity, the City of Houston began issuing citations to the Odutayos for improperly adding fill to the property and for having a driveway connecting their property to Almeda Road when no permits had been issued for construction of the driveway. Specifically, as it relates to the existence of the driveway, the City of Houston issued citations to the Odutayos' project manager on April 2, 2009, for "causing to be constructed a driveway connecting private property with a public street." The City of Houston again issued citations to the project manager on April 13, 2009, for "1) failure as agent of owner to comply with the order of the planning official, to wit: remove culvert; and 2) cause to be constructed, a driveway connecting private property with a public street."

Despite receiving numerous citations, the Odutayos refused to stop adding fill to their property and refused to remove the driveway over the drainage ditch or

to take any other steps to obtain approval for the driveway. Around May 14, 2009, the City of Houston removed the portion of the driveway along the drainage ditch.

Around this time, the Odutayos hired Depak Shah, a civil engineer, to help them obtain the necessary permits to develop the car dealership. Shah obtained permits for the Odutayos to rebuild the driveway across the drainage ditch. He and the Odutayos, however, allowed the permits to expire without building the driveway. Shah explained in his deposition the reason for letting the permits expire:

Q. And the new driveway has not been installed?

A. No.

Q. Do you know why it has not been installed?

A. Because we were trying to clear all the permits for the building and everything.

Q. Well, shouldn't the driveway be the first permit to be cleared?

A. No. But once we get all th[ese] permit[s], then we can install the driveway.

The Odutayos filed suit against the City of Houston on January 26, 2011, asserting a claim of inverse condemnation. The City of Houston answered and filed special exceptions, arguing that the Odutayos had failed to properly assert an inverse condemnation claim. A week later, the Odutayos filed their first amended petition. The City of Houston filed amended special exceptions, again arguing that the Odutayos had failed to properly assert an inverse condemnation claim. The

4

trial court agreed, ordering the Odutayos to state their elements for their inverse condemnation claim. The Odutayos subsequently filed their third amended petition, which is their live pleading.[1]

The third amended petition asserted a "Claim for Taking in Violation of Texas Constitution Article 1, Section 17." They alleged that they, "in reliance on the letter received from the City of Houston, made improvements to the property. . . . Defendant then reversed its actions and destroyed the driveway from Almeda Genoa to Plaintiffs' property without compensation to the Plaintiffs and totally eliminated ingress and egress to the property." The Odutayos further alleged that the City of Houston's actions resulted in a taking of property for public use. "The actions of the City, the restriction on egress and ingress from the property and the refusal to issue a building permit in a timely fashion destroyed the economical[ly] viable use of the property."

The City of Houston subsequently filed a plea to the jurisdiction and motion for summary judgment. It argued that the Odutayos had failed to properly plead an inverse condemnation claim and, accordingly, its immunity from suit remained intact. In their response, the Odutayos argued that they had pleaded "a valid

---

[1] If the Odutayos filed a second amended petition, it is not a part of the record on appeal.

5

'denial of access' takings claim" and that the destruction of the driveway constituted a physical taking.[2]

At the hearing, the Odutayos explained that they were asserting only a claim for a physical taking, not a regulatory taking. Specifically, their attorney told the trial court, "[I]t is clear in my third amended petition that I am not talking about a regulatory taking. I'm talking about a physical taking where they come in without permission from the State of Texas and remove the driveway."

The trial court granted the plea to the jurisdiction, dismissing the Odutayos' claim with prejudice. This appeal followed.

**Plea to the Jurisdiction**

The Odutayos argue in their first issue that the trial court erred by granting the plea to the jurisdiction. They argue in their second and third issues that they should have been given the opportunity to replead.

**A.     Standard of Review & Applicable Law**

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Because subject-matter jurisdiction is a question of law, we review

---

[2]     The Odutayos also alleged in one sentence of their response that they had a valid inverse condemnation claim because the City of Houston had denied them permits for development of the property. They did not otherwise develop this argument.

6

de novo a trial court's ruling on a plea to the jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

The plaintiff bears the initial burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction over a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). When a plea to the jurisdiction challenges the sufficiency of plaintiff's pleadings to confer jurisdiction, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its petition. *Id.* at 227. Otherwise, if the pleadings do not affirmatively demonstrate the trial court's jurisdiction, the plaintiff should be afforded the opportunity to amend its petition. *Id.* at 226–27.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court is required to consider relevant evidence submitted by the parties. *Id.* at 227. If the evidence creates a fact issue regarding jurisdiction, the trial court does not rule but, instead, submits the issue to the fact finder in a trial on the merits. *Id.* at 227–28. Otherwise, the trial court rules on the motion as a matter of law. *Id.* at 228.

The Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ." TEX. CONST. art I, § 17. When a governmental entity takes, damages, or destroys property without compensation, the damaged party can bring a claim for inverse condemnation. *City of Dallas v. Stewart*, 361 S.W.3d 562, 567 (Tex. 2012). To prevail on an inverse condemnation claim, the plaintiffs must prove "(1) the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001). Immunity from suit is waived for validly asserted inverse condemnation claims. *See City of Dallas v. Blanton*, 200 S.W.3d 266, 272 (Tex. App.—Dallas 2006, no pet.) (holding when inverse condemnation claim is not validly alleged, governmental immunity applies and trial court should grant plea to jurisdiction).

Generally, there are two methods by which a governmental entity can commit a taking: physical or regulatory. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). A physical taking is an unwarranted physical occupation or damage to the property. *Id.* "[A] regulatory taking occurs when governmental regulations deprive the owner of all economically viable use of the property or totally destroy the property's value" or when "the regulation has a

8

severe enough economic impact and the regulation interferes with distinct investment-backed expectations." *Id.* at 936–37.

For a physical taking, a direct invasion of property is not required. *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 190 (Tex. App.—Houston [1st Dist.] 1999, no pet.). "Property," as it applies to takings law, does not only mean the real estate, but every right which accompanies its ownership. *See DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965). One of those rights is the right to an easement for right of access to public roads. *Id.* Such claims in an inverse condemnation action are known as "impaired access" or "denial of access" claims. "[I]mpaired access is compensable only when access is materially and substantially impaired." *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008). Whether access has been materially and substantially impaired is determined as a matter of law. *Id.*

## B.    Analysis

The Odutayos argue in their first issue that the trial court erred by granting the plea to the jurisdiction. They assert that they were not violating any ordinances by adding fill or by having a driveway constructed without permits and that, even if they were violating ordinances, the City of Houston could not deny them the right to access by removing the portion of the driveway along the State of Texas's drainage ditch as a response. The City of Houston argues that it has not committed

9

a taking by removing the unpermitted driveway along the drainage ditch because it was exercising a valid police power. We do not need to resolve these disputes of the Odutayos' violations or the City of Houston's authority because we hold that any impairment was not "material and substantial" as a matter of law.

Whether any impaired access is material and substantial is a threshold issue that is resolved as a matter of law. *Id.* Impaired access is analyzed "in light of the actual or intended uses of remainder property as reflected by existing uses and improvements and applicable zoning." *Id.* at 879. Impairment cannot be established by speculative or hypothetical uses of the property. *Id.* To this end, impairment of access to unimproved land is more difficult. *See Cnty. of Bexar v. Santikos*, 144 S.W.3d 455, 460 (Tex. 2004) (holding it is difficult to find effects of access to tract that has no improvements); *see also State v. Delany*, 197 S.W.3d 297, 300 (Tex. 2006) (holding "remaining property on which there are no improvements and to which reasonable access remains is not damaged simply because hypothetical development plans may have to be modified").

In this case, the portion of driveway that was removed was along the State of Texas's drainage ditch. Accordingly, no physical land had been taken from the Odutayos.[3] Additionally, the easement for right of access to public roads still

---

[3] The Odutayos did not assert in their live pleading, in their response to the plea to the jurisdiction, or at the hearing that they had suffered a loss in the value of the physical components of the driveway that were removed. That is, they did not

10

exists at all points along the Odutayos' property boundary with Almeda Road. The only possible grounds for a taking, then, is for diminished access to the property by the act of removing the unpermitted driveway from the time of its removal to the time that the Odutayos obtained all the necessary permits to rebuild the driveway. Assuming without deciding that such a claim is generally recoverable, the evidence established that any impairment was not material and substantial in this case.

The record establishes that, at the time of suit, the property was specifically intended for development into a car dealership. The record also establishes that, at that time, such development was not possible due to the fact that the Odutayos had not yet received the required permits. When they received the necessary permits to rebuild the driveway itself, the Odutayos let those permits expire because they felt there was no need to rebuild the driveway until all of the construction permits had been issued.

This evidence establishes, then, that for the period during which the Odutayos could claim a temporary taking, there was no material and substantial impairment to their right of access. The only thing they were trying to do with the property was develop it to be a car dealership. This one use was not impaired by the destruction of the entrance to the driveway. Instead, they were unable to begin

---

assert that they were deprived of any gravel, cement, or drainage pipe used in the construction of the driveway. Accordingly, any such loss is not a matter before us in this appeal.

11

construction at that time because the Odutayos had yet to complete the process for obtaining permits. Because the Odutayos allowed the subsequently approved permits to rebuild the driveway access to expire and acknowledged that nothing could be done with the property until all permits necessary to begin construction had been received, we hold that the evidence establishes as a matter of law that the impairment to their right of access was not material and substantial.

We overrule the Odutayos' first issue.

In their second and third issues, the Odutayos argue that they should have been given the opportunity to replead. We disagree. Repleading is permitted when the only problem is that the pleadings do not sufficiently plead facts establishing jurisdiction. *See Miranda*, 133 S.W.3d at 226–27. When a plea to the jurisdiction challenges the existence of jurisdictional facts and the relevant facts are not in dispute, then the trial court rules on the plea as a matter of law. *Id.* at 228. Similarly, whether any impaired access is material and substantial is resolved as a matter of law. *Dawmar Partners*, 267 S.W.3d at 878. The evidence established as a matter of law that the Odutayos' impaired access was not material and substantial. This is not a matter of a gap in their pleading jurisdictional facts. Repleading would not be able to change the jurisdictional facts.

We overrule the Odutayos' second and third issues.

12

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.