# Supreme Court of Texas

No. 24-0315

In re Estate of Guadalupe Lopez, Sr., Deceased

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**PER CURIAM**

Justice Lehrmann did not participate in the decision.

"[T]he expert witness paints a powerful image on the litigation canvas," possessing a "vast potential for influence." *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007). The expert in this case is a former family court judge who opined on the central disputed issue in the case, testifying before the jury that, in her view, the parties were informally married. She expressed that opinion repeatedly and emphatically, though none of the relevant evidence was technical, specialized, or otherwise beyond an ordinary person's understanding. Compounding the problem, she lent her opinion credibility by explaining that she formed it using the same methodology she employed when she presided over informal-marriage cases as a judge. Unsurprisingly, the jury was persuaded and found an informal marriage existed.

We hold that the trial court erred in admitting the expert's testimony and that the error was harmful, warranting a new trial. The evidence was within the average juror's common knowledge, so the expert's opinions did not help the jury as Rule of Evidence 702 contemplates. *See* TEX. R. EVID. 702. The expert instead improperly opined on a legal presumption and explained that, if she were sitting as the judge, she would find that the parties were informally married. Mindful that the appearance of a judge as a witness carries the potential both to sway the jury improperly and to "threaten[] . . . public confidence in the integrity and impartiality of the judiciary," *Joachim v. Chambers*, 815 S.W.2d 234, 238 (Tex. 1991) (quotation marks omitted), we conclude that admitting this testimony amounted to harmful error. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial.

**I**

Guadalupe Lopez, Jr. (Lopez Junior) applied for independent administration and an heirship determination after the death of his father, Guadalupe Lopez, Sr. (Lopez Senior). The county court granted the application and rendered judgment declaring Lopez Junior and his two siblings heirs of their father's estate. Elvira Gonzalez later filed a petition for bill of review, alleging she was Lopez Senior's common-law wife and seeking a judgment declaring her an heir.

The trial court withheld ruling on the bill of review until after a jury determined whether Lopez Senior and Gonzalez were informally married. To support her claim that they were, Gonzalez offered the expert testimony of Alicia York, a former district court judge. Over

2

Lopez Junior's objections, the trial court admitted Judge York's videotaped deposition testimony in which she told the jury that Gonzalez "clearly . . . show[ed] that all three elements of common-law marriage existed." The jury found that Lopez Senior and Gonzalez were married, and the trial court rendered judgment granting the bill of review and awarding Gonzalez a share of Lopez Senior's estate.

Lopez Junior appealed, challenging, among other things, the admission of Judge York's testimony. The court of appeals affirmed. ___ S.W.3d ___, 2024 WL 946236, at *1 (Tex. App.—San Antonio Mar. 6, 2024). The court did not decide whether the trial court abused its discretion in admitting Judge York's testimony. It instead offered four reasons why any error was harmless: (1) the testimony was cumulative; (2) none of Judge York's opinions "articulated *improper* legal concepts"; (3) Gonzalez did not emphasize Judge York's testimony; and (4) the other evidence supporting Gonzalez's claim comfortably "withstood Lopez Junior's factual sufficiency challenge." *Id.* at *9-10.

Lopez Junior petitioned this Court for review.

## II

We review a trial court's admission of evidence for an abuse of discretion. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A qualified expert may testify if their "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Because an expert's testimony does not help the jury unless "the expert's knowledge and experience on a relevant issue are beyond that of the average juror," *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357,

3

360 (Tex. 2000), a trial court should exclude an expert's testimony "[w]hen the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury," *id.*; *cf. Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007) ("The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors."). If expert testimony is unhelpful, it is inadmissible, and the trial court errs by allowing it. *See Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 379 (Tex. 2019).

Erroneous admission of expert testimony is harmless—and thus not grounds for reversal—"unless the error probably (though not necessarily) caused rendition of an improper judgment." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008); *see* TEX. R. APP. P. 61.1(a). An error is harmful if it "contributed in a substantial way to bring about the adverse judgment." *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018) (quoting *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 820 (Tex. 1980)). Admission of improper evidence can be harmful even if there is other legally sufficient evidence supporting the verdict. *See Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 884 (Tex. 2014).

To determine whether the error is harmful, "we evaluate the entire case from voir dire to closing argument, considering the evidence, strengths and weaknesses of the case, and the verdict." *Guerra*, 348 S.W.3d at 236. Relevant factors include "the role the evidence played in the context of the trial," *Sevcik*, 267 S.W.3d at 873, "whether counsel emphasized the erroneous evidence," *Guerra*, 348 S.W.3d at 236, "whether the admission of the evidence was calculated or inadvertent,"

4

*id.*, and "whether contrary evidence existed that the improperly admitted evidence was calculated to overcome," *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012). The error is likely harmless if the admitted evidence was cumulative "or if the rest of the evidence was so one-sided that the error likely made no difference." *Sevcik*, 267 S.W.3d at 873. By contrast, the error is likely harmful if the evidence "was crucial to a key issue." *Id. See generally Jackson v. Takara*, 675 S.W.3d 1, 6-7 (Tex. 2023); *In re Est. of Poe*, 648 S.W.3d 277, 285-86 (Tex. 2022); *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 145 (Tex. 2016).

### III

It was error to admit Judge York's expert testimony. The issue on which she opined—whether the evidence established an informal marriage—was within the average juror's knowledge. *See* TEX. R. EVID. 702; *K-Mart*, 24 S.W.3d at 360 ("When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony."). The elements needed to prove an informal marriage—that the couple agreed to be married, lived together as husband and wife after the agreement, and represented to others that they were married, *see* TEX. FAM. CODE § 2.401(a)(2)—are not specialized or otherwise beyond the understanding of an ordinary juror. Gonzalez notably makes no argument as to why "specialized knowledge," TEX. R. EVID. 702, is necessary to determine whether the evidence shows an informal marriage existed. *See Dall. Morning News*, 579 S.W.3d at 379.

5

To the extent Judge York offered insights that could be regarded as specialized or beyond common knowledge, it was in the form of impermissible testimony about the law. *See In re Ayad*, 655 S.W.3d 285, 288 n.1 (Tex. 2022); TEX. R. EVID. 702-704. For example, Judge York testified at length about a Family Code presumption and how the jury should apply it when reviewing the evidence. It is the trial court's role—not that of the expert witness—"to define the particular legal principles applicable to a case." *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 95 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also id.* at 99 ("By permitting attorneys to state opinions as to what the applicable law is, the trial judge voluntarily allows his role as the legal expert in the courtroom to be usurped or diminished by the testifying attorney.").

Rather than help the jury understand subject matter beyond common knowledge, Judge York's testimony served only the improper purpose of providing "an official endorsement" favoring Gonzalez's position. *See Joachim*, 815 S.W.2d at 238. She emphasized that she formed her opinions "wearing [her] judge's hat" and explained that on the evidence presented, based on her experience presiding over 5,000 family-law trials, Gonzalez should win. The trial court thus erred in admitting Judge York's testimony.[1]

---

[1] While courts must be mindful of the unique concerns that arise when a former judge testifies as an expert witness, *see Joachim*, 815 S.W.2d at 239, we do not hold that former judges are categorically prohibited from testifying as experts. For example, testifying about the reasonableness of a party's claim for attorney's fees is a proper subject for expert testimony and does not subject the jury to the expert's judicial views to the extent that the testimony here did. But even in cases in which a former judge's expert testimony is admissible,

6

We also conclude that the error was harmful—that it "contributed in a substantial way to bring about the adverse judgment." *Gunn*, 554 S.W.3d at 668 (quoting *Lorusso*, 603 S.W.2d at 820). Indeed, all the relevant factors in the harm analysis point toward this conclusion.

First, Judge York's testimony was crucial to the only contested issue in the case, on which the evidence cut both ways. *See Sevcik*, 267 S.W.3d at 873 ("[I]f erroneously admitted . . . evidence was crucial to a key issue, the error was likely harmful."). While there is evidence in the record from which the jury could have found an agreement to be married—for example, photos of Lopez Senior wearing a wedding ring, two quinceañera invitations for Gonzalez's daughters identifying Lopez Senior and Gonzalez as "Mr. & Mrs. Lupe Lopez," and a tax form and warranty deed identifying them as married—the record also contains contrary evidence. For example, Lopez Senior and Gonzalez never had a joint bank account, and documentary evidence (tax forms, employment records, and car insurance) showed they identified themselves as "single." And there was testimony that Lopez Senior referred to another woman as his "fiancée" during the time Gonzalez claimed to be his wife. It is thus far from clear whether the jury *would* have found an agreement absent Judge York's testimony as to how she would have weighed the competing evidence in her capacity as a judge. The fact that the evidence was not one-sided makes it more likely the jury relied on

---

trial courts, counsel, and the witness should avoid repeated touting and emphasis of the expert's status as a former judge of the sort apparent in this record. *See id.* ("The entrance of a judge into the litigation arena in aid of a combatant impacts not only the outcome of that conflict but the very idea of judicial impartiality.").

7

her opinion in reaching its verdict. *See Christus Spohn Hosp.*, 222 S.W.3d at 440 ("[T]he expert is generally held out to be, and is seen by the jury as, an objective authority figure more knowledgeable and credible than the typical lay witness.").

Second, we disagree with the court of appeals' conclusion that much of Judge York's testimony was cumulative. *See* 2024 WL 946236, at *9. Her testimony did more than merely restate or summarize the evidence—she provided her own spin on how the jury should weigh competing evidence on the only issue it was asked to decide. *Cf. Bagheri v. State*, 119 S.W.3d 755, 763-64 (Tex. Crim. App. 2003) (concluding that the effect of an expert's testimony regarding a defendant's intoxication "was almost certainly to tip the balance in favor of the State," so the expert's erroneously admitted testimony was not cumulative despite other evidence that the defendant was intoxicated). Judge York was the only expert to testify on the informal-marriage issue. *See State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex. 2008) (concluding that the challenged experts' testimony "was cumulative of substantially similar [testimony] from another expert"); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex. 1990) (concluding that the challenged expert's testimony was cumulative of similar testimony from six other experts). Nor is this a case where "an abundance of evidence" otherwise supports the finding the expert advanced. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 620 (Tex. 1999); *see also Sevcik*, 267 S.W.3d at 873 (noting that the erroneous admission of evidence is likely harmless if "the rest of the evidence was so one-sided that the error likely made no difference"). As

8

detailed above, the evidence conflicted, and Judge York told the jury that Gonzalez should win.

Third, Gonzalez's use of Judge York's testimony was "calculated," not "inadvertent." *Sevcik*, 267 S.W.3d at 874; *see also U-Haul Int'l*, 380 S.W.3d at 136 ("[Plaintiff]'s advocacy for inclusion of this testimony, over objection, suggests it was a significant element of this case."); *Sevcik*, 267 S.W.3d at 874 ("[A] party's insistence on introducing inadmissible testimony 'indicates how important he thought it was to his case.'" (quoting *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 917 (Tex. 1992))).

Finally, we disagree with the court of appeals and Gonzalez that the evidence was not emphasized. *See* 2024 WL 946236, at *10. We have previously rejected arguments that prejudicial evidence was harmless merely because it was mentioned only once, observing "[i]f that were the only rule, there would be little use for the rules of evidence as everyone could ignore them once with impunity." *Sevcik*, 267 S.W.3d at 873-74. Here, Judge York was introduced to the jury as a former family-law judge, and that role was emphasized throughout her testimony.

## IV

The trial court abused its discretion by admitting the testimony of a former judge as an expert witness when (1) the expert's opinion was not beyond common knowledge and therefore did not help the jury as Rule of Evidence 702 contemplates and (2) the expert emphasized that her opinion was the finding she would make if she were the judge in this case. The error was harmful because the improperly admitted evidence was not cumulative and the ultimate issue for the jury was hotly

9

contested, with the parties offering sharply conflicting evidence in support of their respective positions. Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, and remand the case to the trial court for a new trial. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** November 7, 2025