Opinion issued August 30, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00427-CV

———————————

### THE STATE OF TEXAS, Appellant

### V.

### GLEANNLOCH COMMERCIAL DEVELOPMENT, LP, Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Case No. 1041442**

---

## O P I N I O N

Appellant, the State of Texas, challenges the trial court's judgment, entered after a jury trial, in favor of appellee, Gleannloch Commercial Development, L.P. ("Gleannloch"), for $19,486,940.00 in condemnation damages to real property. In four issues, the State contends that the evidence is legally insufficient to support the jury's award of "remainder damages" to two tracts of Gleannloch's real

property and the trial court erred in admitting evidence regarding non-comparable sales, admitting evidence of non-compensable remainder damages, and excluding an expert's opinion that one of the pertinent tracts of land suffered no remainder damages.

We affirm.

## Background

Gleannloch owned two vacant tracts of land, a 68.511-acre tract and a 20.789-acre tract, located in the Gleannloch Farms master-planned community on Boudreaux Road near the city of Tomball, in Harris County, Texas. The State petitioned the county court to condemn two parcels and easements from these two tracts for construction of Segment F-2 of State Highway 99 (the "Grand Parkway"), which was to be built over a portion of Boudreaux Road.

In regard to Gleannloch's 68.511-acre tract, the State, in December 2013, petitioned the county court to condemn a 22.435-acre tract ("Parcel 208") and a 0.1885-acre temporary easement ("Parcel 208 TE"). The county court appointed three special commissioners to determine the fair market value of the land. Following a hearing, the commissioners awarded Gleannloch $9,250,00.00. Both the State and Gleannloch filed objections to the award and requested a jury trial. On May 14, 2014, the State deposited the full amount of the commissioners' award

2

into the court's registry, which established the date of the taking of Parcel 208 from Gleannloch's 68.511-acre tract. And Gleannloch withdrew those funds.

In regard to Gleannloch's 20.789-acre tract, the State, in March 2014, petitioned the county court to condemn an 8.966-acre tract ("Parcel 220") and 1.3359 acres comprising two temporary easements ("Parcel 220 TE 1 & 2"). The county court appointed three special commissioners to determine the fair market value of the land. Following a hearing, the commissioners awarded Gleannloch $3,289,596.00. Both the State and Gleannloch filed objections to the award and requested a jury trial. On September 3, 2014, the State deposited the full amount of the commissioners' award into the court's registry, which established the date of the taking of Parcel 220 from Gleannloch's 20.789-acre tract. And Gleannloch withdrew those funds.

### Pre-trial motions

The Parcel 208 suit and Parcel 220 suit were consolidated over the State's objections. The State filed a pre-trial motion to exclude "non-comparable" sales data utilized by Matthew Deal, Gleannloch's appraisal expert, in forming his opinion of the condemnation damages resulting from the taking of Parcel 208. The State argued that Deal's reliance on sales of small properties, consisting of 3.0 or fewer acres, was improper because his appraisal for the Parcel 208 taking was based on a valuation of the entire 68.511-acre tract as a whole. The State further

argued that because the smaller properties were not comparable in size to the 68.511-acre tract, the data concerning these sales was not proper for purposes of establishing the value of the tract. In response, Gleannloch asserted that the sales data concerning the smaller properties was not used as direct comparables, even though Deal did consider them in forming his opinion of the market value of the 68.511-acre tract. Similarly, at a pre-trial hearing on the State's motion, Deal testified that although he considered the sales in forming his valuation, he did not use them as direct comparables. He explained that he did not make any adjustments to the sales data concerning the small properties and he considered that data because it is the type of market data that buyers and sellers would consider in valuing the subject property. At the conclusion of the hearing, the trial court denied the State's motion to exclude the sales data concerning the small properties.

The State also filed several pre-trial motions[1] to exclude evidence of "non-compensable" damages to the remainder of Gleannloch's 68.511 and 20.789-acre tracts. Specifically, the State asserted that the testimony of Gleannloch's witnesses concerned non-compensable damages for impairment of

---

[1] The State filed three motions pertaining to their non-compensable damages argument: (1) a motion to exclude Deal's testimony on remainder damages, (2) a motion to exclude evidence of community damages generally, and (3) a motion to exclude the opinions of David Bolton, Ron Dagley, and any other witness, regarding damages to the remainder properties based on community damages.

4

access and community damages to the remainder of the tracts, including circuity of travel, impaired visibility, diversion of traffic, or other inconveniences or changes in character to the property associated with the construction of the Grand Parkway. In response, Gleannloch asserted that its remainder damages were not community damages or incurred as a result of impaired access. Rather, the remainder damages arose from the change in character of the property resulting from the use of the part of the property taken.

At a pre-trial hearing on the State's motions, Deal testified that the taking of Parcel 208 changed the highest and best use of the northern remainder from "commercial" to "multifamily" because the Grand Parkway isolates the northern remainder from the rest of the Gleannloch Farms master-planned community. He noted that the nature of the change of the character of the remainder was primarily due to the elimination of "reciprocal access" or "cross accessibility" between the properties. In regard to the southern remainder of Gleannloch's 68.511-acre tract, Deal explained that the State's taking resulted in its loss of "synergy" and connectivity to the northern remainder, which was due to, among other things, the change in character of Boudreaux Road from a major thoroughfare to only a connector street. David Bolton, Gleannloch's Parcel 220 appraisal expert, testified that the southwest remainder of Gleannloch's 20.789-acre tract was damaged because it is no longer adjacent to property with a commercial "highest and best

5

use" that fronts on Boudreaux Road. And Ron Dagley, a representative of Gleannloch, testified that the remainder to Gleannloch's 20.789-acre tract was damaged because a freeway now runs "in front of it." After the hearing, the trial court denied the State's motions.

Gleannloch filed a pre-trial motion to exclude the opinion of the State's expert, Paul Hornsby, that the remainder of Gleannloch's 68.511-acre tract suffered no damages. In its motion, Gleannloch asserted that Hornsby improperly applied the "project influence" rule in valuing the remainder property. The trial court granted Gleannloch's motion, and Hornsby was not allowed to testify regarding the damage to the remainder of Gleannloch's 68.511-acre tract.

*Gleannloch's evidence at trial*

At trial, Deal testified that the highest and best use for Gleannloch's 68.511-acre tract before the State's taking was as a commercial, mixed-use development. He explained that the area is a "significant growth area for Houston" and, due to the population increase, there has been significant development of commercial property in the area. He explained that the vacant 68.511-acre tract was part of Gleannloch's commercial reserves—an area that had been designated from the beginning to be developed with commercial property to serve the residential population.

In forming his valuation opinion, Deal used the "sales comparison approach" and relied on the sales of eight different properties, which he asserted were comparable to Parcel 208 based on use, demographics, and traffic counts. The properties ranged in size from 4.5 to 35.7 acres and in price from $7.61 to $21.00 per square foot.[2] These comparables include a 21-acre tract across the street from Parcel 208, purchased by H.E.B. for $7.00 per square foot. Deal performed adjustments to account for the differences between these properties and Parcel 208, taking into account, among other things, differences in income levels, population density, and traffic. Based on his analysis, Deal opined that the 68.511-acre tract as a whole was worth $8.00 per square foot, making the total pre-taking value of the tract, assuming no taking for the Grand Parkway project, $23,874,856.00. Accordingly, he opined that the value of Parcel 208 was $7,818,200.00.

Deal also testified regarding the damage to the remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, which, as demonstrated in the illustration below, consists of a northern remainder of 37.788 acres and a southern

---

[2]  Deal also examined the sales of fifteen properties that were not comparable in size, for which he made no adjustments. He explained that he did not use them as comparable sales, but only in regard to his analysis of highest and best use considerations for the property as well as what type of commercial developments might be attracted to the area.

remainder of 8.210 acres.[3] He opined that the total value of the remainder property before the taking was $16,056,656.00, based on the $8.00 per square foot valuation.



Regarding the northern remainder, Deal explained that this portion of Gleannloch's 68.511-acre tract is now completely cut off from Gleannloch Farms by the taking of the 400-foot wide Parcel 208 for the Grand Parkway, through which there is no direct access. And the taking eliminated a lighted intersection that once ran through the property on Boudreaux Road and connected the northern remainder to the rest of the community. Thus, the use of the northern remainder as

---

[3] There is also a small, one-foot wide piece of land that is a totally landlocked third remainder which Deal testified essentially has no value, but to which he attributed damages of $100.00.

a commercial, mixed-use development in conjunction with Gleannloch Farms, with internal drive systems connecting the various parts of the tract, was removed by the taking. Additionally, Deal testified that the taking will result in decreased traffic on Boudreaux Road, which was once a major thoroughfare, because it is now cut off by the Grand Parkway and is only a connector street.

Based on his analysis, Deal determined that the highest and best use for the northern remainder of Gleannloch's 68.511-acre tract, after the taking, would be as a multifamily apartment development. And he valued the northern remainder at $4.50 per square foot. This reduced the northern remainder's post-taking value to $7,407,239.00, resulting in damage of $5,761,185.00. Deal also used the "sales comparison approach" to value the remainder after the taking. His $4.50 per square foot value was based in part on an actual sale of approximately half of the northern remainder for that same value within a few months of the taking. He also considered an actual sale of a portion of the remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, for approximately $5.00 per square foot for an apartment development.

Regarding the southern remainder of Gleannloch's 68.511-acre tract, Deal testified that the impact on it is less than the impact on the northern remainder because it is still connected to Gleannloch Farms. However, its value was still impacted by the taking of Parcel 208 because it no longer had the "synergy" it

would have had if it had cross-access to the northern remainder. Further, H.E.B., after the taking, decided to orient its development adjacent to the southern remainder so that the back of its store, instead of its front, now faces the southern remainder, which makes it less attractive from a commercial-development perspective.

Based on his analysis, Deal determined that the highest and best use for the southern remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, would be as a commercial retail development. And he valued the southern remainder at $7.50 per square foot. This reduced the southern remainder's post-taking value to $2,682,075.00, resulting in damage of $178,805.00. Deal also used the "sales comparison approach" to value the remainder after the taking. His $7.50 per-square-foot value was based in part on an actual contract for the sale of 7.20 acres of the southern remainder for $7.50 per square foot to be used as a pharmacy and other retail purposes. He also considered an actual sale of 21.327 acres, adjacent to the southern remainder, to H.E.B. for $7.00 per square foot. Thus, Deal opined that the total damage to the remainder of Gleannloch's 68.511-acre tract, after the taking, was $5,967,242.00.

Deal also calculated the value of the State's Parcel 208 TE taking from Gleannloch for a temporary construction easement of 8,211 square feet. He applied a ten percent "rental rate" to the $8.00 per square foot value for a total of

10

$13,138.00 owed to Gleannloch by the State for its use of this property over a two-year period.

In total, Deal opined that the just and adequate compensation due to Gleannloch for the taking of Parcel 208 and Parcel 208 TE from its 68.511-acre tract was $13,798,580.00, including damage to the remainder of the tract.

Bolton testified that, in regard to the State's taking of Parcel 220, Gleannloch's 20.789-acre tract should be separated into two economic units for appraisal of its pre-taking value, as demonstrated in the illustration below. He identified these two units based on the "intended use in the land use plan" and because the portion fronting Boudreaux Road is "slated for commercial which is typical and usual for the frontage portion of reserves such as this property."



Bolton explained that Economic Unit 1, the northernmost 8.517 acres fronting Boudreaux Road, had a highest and best use as a retail and small commercial (or "pad site") development. Economic Unit 2, the remaining 12.272 acres to the south, had a highest and best use as a multifamily development.

In forming his opinion as to the pre-taking value of Parcel 220, Bolton also utilized the "sales comparison approach." For Economic Unit 1, he used eleven comparable property sales, ranging in size from 1.15 to 6.4 acres and in price from $12.25 to $25.00 per square foot. Nine of these comparable sales are in close proximity to a grocery store, as Parcel 220 is located next to an H.E.B. Bolton made adjustments to account for the differences between the properties and Economic Unit 1, taking into account differences that might make each sale inferior or superior to the subject property. Based on his analysis, Bolton opined that the pre-taking market value of Economic Unit 1 was $13.75 per square foot, or $5,101,181.00.

For Economic Unit 2, Bolton used four comparable property sales, ranging in size from 15.063 to 23.533 acres and in price from $5.45 to $7.93 per square foot. He then made adjustments to account for the differences between the properties and Economic Unit 2. Based on his analysis, Bolton opined that the pre-taking market value of Economic Unit 2 was $5.50 per square foot, or $2,940,295.00. Thus, he opined that the total market value of the entire

20.789-acre tract, before the taking, was $8,041,476.00, the sum of his value for both Economic Unit 1 and Economic Unit 2. Because the State's taking of Parcel 220 encompassed all of Economic Unit 1, but only 19,547 square feet of Economic Unit 2, Bolton valued the part actually taken at $5,208,690.00.

Bolton also testified regarding the damage to the remainder of Gleannloch's 20.789-acre tract, which, as demonstrated in the illustration below, consists of a southwest remainder and a northeast remainder.



He conducted a second appraisal of post-taking comparable sales including an actual sale of a portion of the northern remainder of Gleannloch's 68.511-acre tract and the actual sale of the southwest remainder itself, which sold three months after the taking for $5.00 per square foot. Bolton valued the southwest remainder at $5.00 per square foot, and he valued the northeast remainder at zero because it was unusable and cut off from the rest of the property by the State's easements.

13

Thus, Bolton opined that the total damage to the remainder of Gleannloch's 20.789-acre tract, post-taking, was $415,661.00. And, he valued the damage for the taking of Parcel 220 TE 1 & 2 at $64,000.00. In total, Bolton opined that the just and adequate compensation due to Gleannloch for the taking of Parcel 220 and Parcel 220 TE 1 & 2 from its 20.789-acre tract was $5,688,360.00, including damage to the remainder of the tract.

*The State's evidence at trial*

Hornsby testified that to determine the pre-taking value of Gleannloch's 68.511-acre tract, he divided it into two economic units because it was large and unlikely to be developed as one tract. He explained that Economic Unit 1, approximately 40 acres on the west side of the tract, had a highest and best use as a multifamily development. Economic Unit 2, the remaining 28.5 acres on the east side of the tract bordering the former intersection of Boudreaux Road and Gleannloch Forest Drive, had a highest and best use as a commercial or retail development.

For Economic Unit 1, Hornsby used three comparable sales, ranging in price from $6.00 to $6.50 per square foot. He made adjustments to account for the differences between the properties and Economic Unit 1. Based on his analysis, Hornsby opined that the pre-taking market value of Economic Unit 1 was $6.10 per square foot, or $10,594,096.00. For Economic Unit 2, he used three

14

comparable sales, ranging in price from $5.15 to $9.50 per square foot. He made adjustments to account for the differences between those properties and Economic Unit 2. Based on his analysis, Hornsby opined that the pre-taking market value of Economic Unit 2 was $7.30 per square foot, or $9,107,626.00. Applying these values, he determined the value for Parcel 208, the 22.44-acre tract taken by the State, was $6,296,964.00, and the value of Parcel 208 TE, taken by the State for a temporary construction easement, was $10,017.00. In total, Hornsby opined that the just and adequate compensation due to Gleannloch for the taking of Parcel 208 and Parcel 208 TE from its 68.511-acre tract was $6,306,981.00.

As noted above, the trial court precluded Hornsby from testifying about the damage to the remainder of Gleannloch's 68.511-acre tract after the taking of Parcel 208. However, the State did make an offer of proof as to the testimony Hornsby would have given on remainder damages had he been permitted to testify.

Michael Urban, the State's Parcel 220 expert, testified that, in regard to the State's taking of Parcel 220, Gleannloch's 20.789-acre tract should be separated into two economic units for appraisal of its pre-taking value. And he divided the units up in the same manner as Gleannloch's expert, Bolton. Using comparable sales and adjustments, Urban valued Economic Unit 1 at $7.50 per square foot and Economic Unit 2 at $5.25 per square foot, opining that Gleannloch's 20.789-acre

15

tract had a total pre-taking value of $5,589,108.00. Applying these values, he determined that the value of the 8.97-acre tract actually taken was $2,885,085.00.

Urban further testified that the southwest remainder had the same market value post-taking and, thus, suffered no damage. However, he explained that the northeast remainder of Gleannloch's 20.789-acre tract was 97% damaged because it was cut off from the rest of the property by the State's easement and suffered $161,061.00 in damages. He also assessed the value of the damage for the taking of Parcel 220 TE 1 & 2 at $42,770.00. In total, Urban opined that the just and adequate compensation due to Gleannloch for the taking of Parcel 220 and Parcel 220 TE 1 & 2 from its 20.789-acre tract was $3,088,916.00, including damage to the remainder of the tract.

*Jury charge and judgment*

After the parties rested, the trial court presented its charge to the jury. It included the following instructions and definitions:

## JURY INSTRUCTION NO. 1

### Market Value

You are instructed that "market value" means the price that the property would bring when it is offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity to buy, taking into consideration all uses of which the property is reasonably adaptable and for which it either is or in all reasonable probability will become available in the marketplace within the reasonably foreseeable future. In making your

16

determination of "market value[,"] you will consider the highest and best use of the property involved.

## JURY INSTRUCTION NO. 2

### Highest and Best Use

You are instructed that "highest and best use" means the reasonably probable and legal use of the property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value.

## JURY INSTRUCTION NO. 3

(a) **The Market Value "Before the Taking"**: You are instructed that in determining the market value of the property taken from Gleannloch and Gleannloch's remainder property "before the taking[,"] the market value in each instance shall be determined as if there were never a Grand Parkway toll road project.

(b) **The Market Value "After the Taking"**: You are instructed that in determining the market value of Gleannloch's remainder property "after the taking[,"] you shall consider the effects, if any, that the State's taking, and the State's proposed use of the property taken for its toll road project, may have had on the market value of Gleannloch's remainder property "after the taking."

After hearing the arguments of counsel and retiring to consider its verdict, the jury awarded Gleannloch its damages in accord with the testimony of its experts. It awarded Gleannloch $7,818,200.00 for the taking of Parcel 208, $5,967,242.00 for damage to the remainder of Gleannloch's 68.511-acre tract, and $13,138.00 for the taking of Parcel 208 TE. And it awarded Gleannloch $5,208,690.00 for the taking of Parcel 220, $415,661.00 for damage to the remainder of Gleannloch's 20.789-acre tract, and $64,009.00 for the taking of

17

Parcel 220 TE 1 & 2.  Thus, the jury awarded Gleannloch $13,798,580.00 for the taking of and damage associated with Parcel 208 and $5,688,260.00 for the taking of and damage associated with Parcel 220.  In total, it awarded damages to Gleannloch in the amount of $19,486,940.00.  The trial court entered judgment in accordance with the verdict.  And the State filed a motion for new trial, which was overruled by operation of law.

## Sufficiency of the Evidence

In its fourth issue, the State argues that the evidence is legally and factually insufficient to support the jury's verdict of $5,967,242.00 in remainder damages regarding Gleannloch's 68.511-acre tract after the taking of Parcel 208 and $415,661.00 in remainder damages regarding the Gleannloch's 20.789-acre tract after the taking of Parcel 220 because "the majority of the evidence of compensation for remainder damages" for both tracts "was irrelevant, unreliable and incompetent."  In regard to both its legal and factual-sufficiency challenges, the State asserts that it is "entitled to a new trial."

When a party challenges the legal sufficiency relative to an adverse finding on which it did not bear the burden of proof,[4] it must show that no evidence

---

[4] "While the burden of proof regarding the right to condemn and certain other matters is generally on the condemnor, the 'burden as to the value is on the condemnee.'" *Religious of the Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 613 (Tex. 1992) (quoting *Miers v. Housing Auth. of Dallas*, 266

supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, a "court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *Id.* at 822. The term "inference" means,

> [i]n the law of evidence, a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved . . . .

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting *Inference*, BLACK'S LAW DICTIONARY (5th ed. 1979)). For a fact finder to infer a fact, "it must be able to deduce that fact as a logical consequence from other proven facts." *Id.*

If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs &*

---

S.W.2d 842, 845 (Tex. 1954)). Here, Gleannloch bore the burden of proof at trial on the issue of valuation.

*Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then fact finders must be allowed to do so. *City of Keller*, 168 S.W.3d at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.*

When an appellant challenges the factual sufficiency of the evidence on an issue, we view all of the evidence in a neutral light and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The fact finder is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

In Question No. 2 of its charge, the trial court asked the jury:

> What do you find from a preponderance of the evidence are the damages, if any, to Gleannloch's 46.076 acre (2,007,082 square feet) remainder property?

The jury answered: $5,967,242.00. In Question No. 5 of its charge, the trial court asked the jury:

> What do you find from a preponderance of the evidence are the damages, if any, to Gleannloch's 11.824 acre (515,052 square feet) remainder [p]roperty?

The jury answered: $415,661.00. In both questions, the trial court included the following instruction:

> You are instructed that the remainder damages should be determined based on the difference in the market value of the remainder property immediately before the taking and the market value of the remainder property immediately after the taking.

The State argues that "the majority of evidence of compensation for remainder damages regarding Parcels 208 and 220 was irrelevant, unreliable and incompetent" because "[i]njury due to nonmaterial impairment of access is not compensable." However, "the measure of compensation in a partial-takings case is 'the market value of the part taken plus damage to the remainder caused by the condemnation.'" *State v. Petropoulos*, 346 S.W.3d 525, 530 (Tex. 2011) (quoting *Westgate, Ltd. v. State*, 843 S.W.2d 448, 456 (Tex. 1992)). And, "a change in a property's use due to condemnation is relevant to the fair market value of the property." *State v. Dawmar Ptrs., Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008).

21

Accordingly, the trial court appropriately instructed the jury in regard to its answering of Questions 2 and 5 of its charge.

Regarding the northern remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, Deal, Gleannloch's expert, testified that the condemnation changed its highest and best use. Specifically, he explained that the remaining acreage would no longer, as previously planned, be marketable as a commercial, mixed-use development servicing Gleannloch Farms because it is no longer connected or directly accessible to the community due to the taking. He also attributed the change in highest and best use to the decrease in traffic on Boudreaux Road, which is no longer a major thoroughfare. Based on his analysis, Deal determined that the highest and best use for the northern remainder, after the taking of Parcel 208, would be as a multifamily apartment development. And he valued the northern remainder at $4.50 per square foot, an adjustment reduction from the pre-condemnation value of $8.00 per square foot. Deal used the "sales comparison approach" to value the remainder after the taking. His $4.50 per square foot value was based in part on an actual sale of approximately half of the northern remainder for that same value within a few months of the taking. He also considered an actual sale of a portion of the remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, for approximately $5.00 per square foot. In

sum, Deal explained that the total value of the northern remainder was reduced, resulting in damage of $5,761,185.00.

In regard to the southern remainder of Gleannloch's 68.511-acre tract after the taking of Parcel 208, Deal testified that it was less impacted by the taking than the northern remainder because it was still connected to the Gleannloch Farms development. However, its value was still impacted by the taking of Parcel 208 due to the loss of "synergy" it would have had with the northern remainder and because H.E.B., after the taking, decided to orient its development adjacent to the southern remainder so that the back of its store now faces the southern remainder, which is less desirable for prospective commercial tenants. Based on his analysis, Deal determined that the highest and best use for the southern remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, would be as commercial retail development. As part of his analysis, he used comparable sales to value the southern remainder at $7.50 per square foot, including the nearby sale of land to H.E.B. for $7.00 per square foot. This reduced the southern remainder's value to $2,682,075.00, resulting in damage of $178,805.00. Thus, the total damage to the remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, was $5,967,242.00.

In regard to the southwest remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, Bolton, Gleannloch's expert, testified that he used

comparable sales including an actual sale of a portion of the southwest remainder, which sold post-taking for $5.00 per square foot. Bolton valued the southwest remainder at $5.00 per square foot, reduced from his pre-taking appraisal of $5.50 per square foot, resulting in damage in the amount of $241,712.50. Because the northeast remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, was completely cut off from the rest of the property by the State's two temporary easements, Bolton assessed its value at $0.00 per square foot, resulting in damage in the amount of $173,948.50. In total, Bolton opined that the damage to the remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, was $415,661.00.

Urban, the State's Parcel 220 expert, testified that the southwest remainder of Gleannloch's 20.789-acre tract suffered no damages, but that the northeast remainder was 97% damaged since it was cut off from the rest of the property. Accordingly, he attributed a total of $161,061.00 in damage to the remainder of Gleannloch's 20.789-acre tract after the taking of Parcel 220.

In sum, the jury awarded $5,967,242.00 in damages to the remainder of Gleannloch's 68.511-acre tract after the taking of Parcel 208 and $415,661.00 in damages to the remainder of Gleannloch's 20.789-acre tract after the taking of Parcel 220. As set forth above, these amounts are supported by the testimony presented by Gleannloch's experts at trial, both of whom relied upon the

24

widely-accepted comparable sales approach in formulating their opinions. *See City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001) ("Courts have long favored the comparable sales approach when determining the market value of real property."). Therefore, we cannot say that the jury findings in regard to damages to the remainder of Gleannloch's 68.511-acre and 20.789-acre tracts, after the taking of Parcels 208 and 220, are not supported by more than a scintilla of evidence or that they are against the great weight and preponderance of the evidence so as to be manifestly unjust. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's award of remainder damages in this case.[5]

We overrule the State's fourth issue.

**Admission of Evidence**

In its first, second, and third issues, the State asserts that the trial court erred in admitting evidence and opinions of non-compensable sales, admitting evidence of non-compensable damages, and excluding the opinions of Hornsby, its appraisal expert, that "Parcel 208 suffered no damages, including his opinions regarding the value of the remainder before and after the State's acquisition, and the difference in those two values."

---

[5] Because we overrule the State's challenges to the use of alleged non-comparable sales and non-compensable damages by Gleannloch's appraisal experts, these arguments do not impact our holding on the State's challenge to the sufficiency of the evidence to support Gleannloch's remainder damages.

25

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We will uphold a trial court's evidentiary ruling if any legitimate ground supports the ruling, even if the ground was not raised in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). And we will not reverse an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment or prevented a proper presentation of the appeal. *See* TEX. R. APP. P. 44.1(a); *Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 474 (Tex. 1998). In determining if the excluded evidence probably resulted in the rendition of an improper judgment, we review the entire record, and, "[t]ypically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Ordinarily, we will not reverse a judgment because a trial court erroneously excluded evidence if the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Id.*

***Non-comparable sales***

In its first issue, the State argues that the trial court erred in admitting Deal's testimony about "fifteen small-acreage sales" to support his valuation of the entirety of Gleannloch's 68.511-acre tract because "such sales were not comparable" and "Deal's opinions regarding them were not reliable or relevant." Gleannloch argues that admission of Deal's testimony about the additional sales was proper because he relied on them to support his determination of the property's highest and best use and not as direct comparisons. It further argues that any error in the admission of this evidence was harmless because Deal's valuation opinion is also supported by eight comparable sales that the State does not challenge.

The "sales comparison approach" used by Deal in forming his valuation opinion for Gleannloch's 68.511-acre tract is a well-accepted "means for determining the market value of land." *Houston Unltd., Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 829 (Tex. 2014). "Under this approach, 'the appraiser finds data for sales of similar property' that are 'voluntary,' 'near in time,' 'in the vicinity,' and 'involve land with similar characteristics.'" *Id.* (quoting *Sharboneau*, 48 S.W.3d at 182). "The appraiser then uses the prices from the comparison sales, which establish the market value of similar properties, to

determine the market value of the subject property, by adjusting the price upward or downward to account for differences between the properties." *Id.* at 829–30.

Although the State argues at length that the trial court erred in admitting Deal's testimony about the non-comparable land sales, it has not demonstrated that this alleged error actually caused harm or the rendition of an improper judgment. *See State v. Chana*, 464 S.W.3d 769, 786–87 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Rather, the State merely asserts that Gleannloch sought to impermissibly "bolster" Deal's value opinion and "stack the deck in favor of its own opinions" because the non-comparable sales had an "unadjusted average sales price of $17.73 per square foot."

However, the eight comparable sales upon which Deal relied as direct comparisons to the subject property, and to which the State did not object, ranged in size from 4.5 to 35.7 acres and in price from $7.61 to $21.00 per square foot. Deal's ultimate opinion that Gleannloch's 68.511-acre tract's pre-taking value was $8.00 per square foot is well-within, and even on the lower end of, the range of his unchallenged comparables. Therefore, we cannot say that the trial court's alleged error in admitting Deal's testimony about the fifteen additional, non-comparable sales probably caused the rendition of an improper judgment. *See, e.g.*, *Tex. Pipe Line Co. v. Hunt*, 228 S.W.2d 151, 156 (1950) (expert opinion on market value of real property "does not cease to have probative force when impropriety attaches

only to some, rather than all, of its underlying reasons"); *Harris Cty. Flood Control Dist. v. Taub*, 502 S.W.3d 320, 338 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding abuse of discretion in admitting non-comparable sales did not result in improper verdict "because evidence of remaining comparable sales" supported expert's testimony and jury verdict); *Chana*, 464 S.W.3d at 785–87 (assuming evidence of five of ten comparable sales relied upon inadmissible, but holding error harmless because five remaining comparable sales, ranging from $7.70 per square foot to $19.50 per square foot, supported jury's finding in accordance with expert's opinion of $9.50 per square foot); *but see State v. Schaefer*, 530 S.W.2d 813, 817 (Tex. 1975) (erroneous admission of evidence harmful where it "put before the jury the only possible basis for the award that was made").

Accordingly, we hold that the trial court's error, if any, in admitting Deal's testimony about the "fifteen small-acreage," non-comparable sales was harmless.

We overrule the State's first issue.

### Non-compensable damages

In its second issue, the State argues that the trial court erred in admitting evidence of "[i]njury due to nonmaterial impairment of access" and "community injuries" because such injuries are "not compensable." It asserts that the jury "awarded remainder damages of $5,967,242.00 regarding Parcel 208, and

remainder damages of $415,661.00 regarding Parcel 220, based on elements of damages that are clearly not compensable."

"[T]he measure of compensation in a partial-takings case is 'the market value of the part taken plus damage to the remainder caused by the condemnation.'" *Petropoulos*, 346 S.W.3d at 530 (quoting *Westgate*, 843 S.W.2d at 456). And, "a change in a property's use due to condemnation is relevant to the fair market value of the property." *Dawmar*, 267 S.W.3d at 878. However, not all diminished value to remainder property is compensable. *Cty. of Bexar v. Santikos*, 144 S.W.3d 455, 459 (Tex. 2004). "[D]iminished value is compensable only when it derives from constitutionally cognizable injury." *Dawmar*, 267 S.W.3d at 878. Therefore, "[w]hether damages can be recovered depends on what kind of damage is involved." *Santikos*, 144 S.W.3d at 459. Compensability of damages to a remainder property is a question of law subject to de novo review. *Id.*

One limitation on the compensability of remainder damages is that the injury must be peculiar to the owner of the land taken and not an injury experienced in common with the general community. TEX. PROP. CODE. ANN. § 21.042(d) (Vernon 2014); *Santikos*, 144 S.W.3d at 463. "It is the nature of the injury rather than its location that is critical in determining whether it is [a] community" damage, and therefore not compensable. *State v. Schmidt*, 867 S.W.2d 769, 781 (Tex. 1993); *see also Padilla v. Metro. Transit Auth. of Harris Cty.*, 497 S.W.3d

30

78, 84 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (community damages include "noise, dust, increased traffic, diversion of traffic, circuity of travel, and other inconveniences incident to road or highway construction"). Also, while not barred by the concept of community damages, diminished value resulting from impaired access is compensable only when a material and substantial impairment exists as a matter of law. *Dawmar*, 267 S.W.3d at 878; *see also* TEX. PROP. CODE ANN. § 21.042(d). Diminution in the value of property due to diversion of traffic, diminished exposure to traffic, altered accessibility to the roadway, or circuity of travel does not amount to a material and substantial impairment of access. *Petropoulos*, 346 S.W.3d at 532; *Schmidt*, 867 S.W.2d at 774.

The State asserts that Gleannloch's evidence of damages to the remainder of its 68.511-acre and 20.789-acre tracts, after the taking of Parcels 208 and 220, is based on non-compensable community or impairment-of-access damages. This is not supported by the evidence in the record. Instead, the evidence presented at trial establishes that Gleannloch's remainder damages arise out of the State's use of the condemned land and they are unique to the remainder properties, not shared by the community at large.

In regard to the northern remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, the evidence introduced at trial in support of diminished value was based on Deal's testimony. He explained that the damages to the

31

northern remainder necessarily followed from the fact that the State completely cut it off from the southern remainder and the Gleannloch Farms master-planned community. This severance, according to Deal, resulted in a change of the northern remainder's highest and best use from a commercial, mixed-use development that would service the Gleannloch Farms community to a stand-alone multifamily development, which is significantly less valuable.

And Deal specifically explained that his damages appraisal did not focus on access to the northern remainder and he found no material impairment of access to it after the taking of Parcel 208. He further confirmed that his valuation opinion was not based on community damages, but instead on "damages specific to the property and specific to the use of the property by the State and the impact of that use on the remainder property." Thus, Deal's discussion about lack of direct access and "synergy" in regard to the northern remainder is relevant and essential to explaining how its highest and best use changed from predominantly commercial to multifamily. *See Dawmar*, 267 S.W.3d 878 ("We have long held that a change in a property's use due to condemnation is relevant to the fair market value . . . .").[6]

The record also demonstrates that Deal's testimony about the damage to the southern remainder of Gleannloch's 68.5110-acre tract, after the taking of Parcel

---

[6] Similarly, the evidence does not support the State's assertion that Gleannloch sought damages for lack of access to the Grand Parkway.

208, was not based on evidence of non-compensable damages. Although its highest and best use did not change, as Deal explained, the southern remainder became less valuable as a result of the taking of Parcel 208 and the change in character of the surrounding property. Specifically, the disconnection of the northern remainder negatively impacted the southern remainder, even though it is still attached to Gleannloch Farms, because it lost the value of being part of a larger, integrated commercial development.

Finally, the jury's award of damages regarding the southwest remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, is not based on evidence of non-compensable damages. Bolton, Gleannloch's appraisal expert, explained that his post-condemnation appraisal of the value of the southwest remainder was based on a sale, which occurred within months of the taking of Parcel 220, of a portion of the southwest remainder itself, for a multifamily development at $4.50 per square foot. Further, Dagely, a representative of Gleannloch, attributed the slight reduction in value of the southwest remainder to the loss of the planned commercial development by the taking of Parcel 220, adjacent to the southwest remainder, which would have fronted Boudreaux Road. Instead, any multifamily development that is constructed on the southwest remainder will now be adjacent to the Grand Parkway, which is less attractive.

In sum, the record establishes that the damage to the remainder of Gleannloch's 68.511-acre and 20.789-acre tracts resulted from the State's taking of Parcels 208 and 220 and that the Grand Parkway project bisected the remainder, causing a change in its highest and best use; thus, the remainder property was affected in a "special and unique way" that decreased its overall market value. *Interstate Northborough*, 66 S.W.3d at 222 (explaining "record establishe[d] that the damages due to [remainder property's] increased proximity to frontage road, resulting in loss of curb appeal, green space, and 'buffer zone,' affected . . . remainder property in a special and unique way" because, among other reasons, building lost tenant interest and, therefore, market value).

Accordingly, we hold that the trial court did not err in admitting Gleannloch's evidence of the change in the fair market value of the remainder of its 68.511-acre and 20.789-acre tracts that resulted from the State's taking of Parcels 208 and 220. We further note that even assuming that the trial court erred in admitting evidence of non-compensable damages, such error would be harmless because comparable sales support the remainder value opinions presented by Gleannloch's experts at trial. As previously discussed, Deal supported his $4.50 per square foot value for the northern remainder of Gleannloch's 68.511-acre tract after the taking of Parcel 208, in part, with an actual sale of part of the northern remainder. And, Deal supported his $7.50 per square foot value for the southern

remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, with a contract for sale of that remainder as well as the nearby purchase of land to develop an H.E.B. for $7.00 per square foot. Similarly, Bolton supported his $5.00 per square foot value for the southwest remainder of Gleannloch's 20.789-acre tract, after the taking of Parcel 220, with a sale from the southwest remainder itself for multifamily use as well as the sale of a part of the northern remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, for $4.50 per square foot for the same type of development.[7] Thus, the trial court's judgment does not "turn[] on the particular evidence . . . admitted" and there could be no harm. *Interstate Northborough*, 66 S.W.3d at 220.

We overrule the State's second issue.

### *Hornsby's remainder damages*

In its third issue, the State argues that the trial court erred in excluding "Hornsby's opinions that Parcel 208 suffered no damages, including his opinions regarding the value of the remainder before and after the State's acquisition, and the difference in those two values" because "there was nothing improper about [his] valuation."

---

[7] The State does not challenge the evidence admitted at trial regarding the damages to the northeast remainder of Gleannloch's 20.789-acre tract after the taking of Parcel 220.

Market value is typically established through expert testimony. *See*, *e.g.*, *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851–52 (Tex. 2011). As with any other testifying expert, an expert appraisal witness in a condemnation suit must not only be qualified, but his opinions must be relevant and based upon a reliable foundation. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234–35 (Tex. 2010); *see also* TEX. R. EVID. 702. An expert's testimony is relevant when it assists the jury in determining an issue or in understanding other evidence. TEX. R. EVID. 702. And a court assesses an expert opinion's reliability by examining the principles, research, and methodology underlying the expert's conclusions. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002); *Chana*, 464 S.W.3d at 776.

"[E]xpert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Zwahr*, 88 S.W.3d at 629 (quoting *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995)). "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997).

The trial court granted Gleannloch's motion to exclude Hornsby's opinion testimony about damage to the remainder of Gleannloch's 68.51-acre tract, after the taking of Parcel 220, because it found that his opinion was "not based on credible evidence . . . facts[,] or data," explaining that "surmising and guessing" is not "good enough to support his opinion." Gleannloch based its motion to exclude Hornsby's opinion primarily on the fact that he assumed that Boudreaux Road, after the taking, would still be expanded to a four-lane road and there would be increased development along this road, resulting in a misapplication of the project-influence rule. The State argues that Hornsby's opinion was proper because he specifically excluded non-compensable damages such as community and impairment-of-access damages.

The project-influence rule "provides that any change in property value that results from the government manifesting a definite purpose to take property as part of a governmental project must be excluded from an award of adequate compensation" and "ensures that the condemnee is made whole, not placed in either a better or worse position than he or she would have enjoyed had there been no condemnation." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142–43 (Tex. 2016). Thus, it follows that any assessment of the remainder property's value after the taking must reflect the effect of the condemnation. *See Westgate*, 843 S.W.2d at 456 (reaffirming well-established law "measure of compensation in a partial-

takings case is the market value of the part taken plus damage to the remainder caused by the condemnation"); *see also* TEX. PROP. CODE. ANN. § 21.042(c) (explaining, in context of condemnation proceedings in partial-takings cases, special commissioners should "determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property").

Here, the evidence regarding the status of Boudreaux Road before and after the taking is largely undisputed. Before the taking, Boudreaux Road was a major thoroughfare in the area and on track to be expanded to four lanes had the taking not occurred. As a result of the taking, the Grand Parkway now runs over a portion of Boudreaux Road, cutting it off without through access. And what remains of that portion of Boudreaux Road is now a connector street. Despite these facts, Hornsby, in forming his valuation opinion, still assumed that the remaining portions of Boudreaux Road would be expanded to four lanes and experience the benefit of increased traffic and development. Yet, he admitted that he was made aware that Harris County had no plans to expand Boudreaux Road after the taking. Although the facts relied upon by an expert "need not be undisputed," an expert's testimony is unreliable if it is "contrary to actual, undisputed facts." *Caffe Ribs*, 487 S.W.3d at 144. The State's argument that Hornsby's valuation opinion is

proper because it excludes non-compensable, community damages is without merit because it fails to address the inherent foundational reliability issue presented by Hornsby's assumption of speculative facts that are contrary to the current undisputed reality.

The State asserts that even if Hornsby's opinion as to the value of the remainder of Gleannloch's 68.511-acre tract, after the taking of Parcel 208, was inadmissible, the trial court still should have allowed him to testify about his opinion as to the value of the remainder properties before the taking. However, Hornsby's pre-taking valuation of the remainder property was only relevant to his remainder analysis. Therefore, excluding this portion of his testimony was within the trial court's broad discretion. *See Chana*, 464 S.W.3d at 775–76. Regardless, the trial court permitted Hornsby to testify as to his opinion about the pre-taking value of the entire 68.511-acre parcel as a whole. Thus, any error would be harmless because the jury was, in effect, allowed to hear his per-square-foot pre-taking valuation of the remainder properties. *See Caffe Ribs*, 487 S.W.3d at 144–45.

Accordingly, we hold that the trial court did not err in excluding Hornsby's opinion testimony as to the damage to the northern and southern remainder properties of Gleannloch's 68.511-acre tract.

We overrule the State's third issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Higley.