IN THE COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT
TYLER, TEXAS

| | | |
|---|---|---|
| *TIMBER LAKE ESTATES PROPERTY OWNERS ASSOCIATION, INC., APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JAMES DRISCOLL AND CAROL DRISCOLL, APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Timber Lake Estates Property Owners Association, Inc. (TLEPOA) appeals from the trial court's granting of summary judgment in favor of Appellees James Driscoll and Carol Driscoll (the Driscolls) and the trial court's denial of its hybrid motion for partial summary judgment. In two appellate issues, TLEPOA argues that (1) the Driscolls' easement across TLEPOA's five-foot barrier strip of land is legally invalid, and (2) TLEPOA's dedication of the street for county maintenance does not invalidate the existence of the boundary barrier. We affirm.

## BACKGROUND

The proceeding below began when James W. Cathey and Lydia Cathey (the Catheys) filed a declaratory judgment action against the Driscolls regarding "a purported easement fraudulently granted" to the Driscolls by TLEPOA. The Catheys asserted that they are residents of Timber Lake Estates Subdivision, and they pleaded that a five-foot strip on the north and east sides of the Subdivision was conveyed to TLEPOA by special warranty deed "to protect the [s]ubdivision from intrusion from adjoining property owners who are not part of Timber Lake Estates." The plat filed by the developer of the subdivision states as follows: "I, George Jackson[,] hereby certify that I am the sole owner of the property shown hereon, and do hereby adopt this plat designating this

1

property as 'Timber Lake Estates'[,] dedicating streets for public use."[1] The plat indicates that a street called Crestview[2] runs along the northern border of the subdivision, and the plat states as follows along the northern border: "5' strip reserved by developer[.]"

According to the Catheys, there is only one road into and out of the subdivision to minimize traffic, and the strip "acts as a buffer/barrier from driveways . . . being built allowing access to the adjoining properties on the [n]orth and [e]ast sides of the [s]ubdivision." The restrictions and covenants of Timber Lake Estates include the following: "The Seller retains an easement five (5) feet square along the perimeter of the lot to be used for purposes of the utilities. Exact location to be decided by the utility company." A quitclaim deed dated May 1, 1995, states that the developer's successor granted to TLEPOA "[a]ll that certain five (5) foot utility easement referred to as Restriction Number 16 of the Restrictions and Covenants of Timber Lake Estates, filed for record on March 9, 1972, recorded in . . . the Deed Records of Henderson County, Texas. Said five (5) [foot] utility easement is further referenced" on the recorded subdivision plat.

A special warranty deed, dated June 29, 1996, recites that the developer intended to retain a five-foot strip of land running along the north and east sides of the subdivision "to serve as a buffer to protect the properties of Timber Lake Estates against intrusion by owners or persons from the adjoining property." According to the recitations in the special warranty deed, the developer intended that the five-foot strip would prevent adjoining property owners from accessing their property via streets or roads inside Timber Lake Estates subdivision and prevent adjoining property owners from "claim[ing] any easement right in any part" of the subdivision. The special warranty deed indicates that the developer conveyed his entire interest to Wayne D. Jackson, including the five-foot strip; that Wayne D. Jackson executed a quitclaim deed "conveying to [TLEOPA] his interest in a 5' utility easement referred to in Restriction No. 16 of the Restrictions and Covenants of Timber Lake Estates[;] and "[i]t was erroneously stated in such quit[]claim deed that the easement strip being conveyed was also referenced on the Plat of said Subdivision. . . . Such reference . . . was erroneous because no easement is shown on such Plat, and the 5' strip retained

---

[1] *See* TEX. TRANSP. CODE ANN. § 281.003 (West 2013) (providing that a dedication must be "an explicit voluntary grant of the use of a private road for public purposes" and "communicated in writing to the commissioners court of the county in which the real property is located."). The record reflects that the commissioners court accepted the plat and agreed to maintain the road.

[2] In some documents in the appellate record, including the plat, the name of the street is spelled as two words ("Crest View").

by GEORGE JACKSON . . . is not an easement and no easement rights exists in said 5' strip[.]" According to the recitations in the special warranty deed, the five-foot strip "is not an easement and no easement rights exist in said 5' strip of land . . . and no easement rights in said 5' strip . . . have ever been granted or conveyed, retained or dedicated, except a road easement crossing said strip granted to Charlie B. Fields, et al dated February 12, 1980[.]" In the special warranty deed, Wayne D. Jackson conveyed the five-foot strip to TLEPOA.

The Catheys asserted that in 2017, the Driscolls acquired a twenty-acre tract of land adjoining the subdivision, but which is not part of the subdivision, and the Driscolls began seeking access to the tract through the subdivision. Renda Garner, the president of TLEPOA, executed a written easement allowing the Driscolls access to the twenty-acre tract through the subdivision. The Catheys contended that Garner's execution of the easement violated TLEPOA's bylaws, which require that both the president and secretary or another proper officer who is authorized by the Board of Directors sign deeds or other legal documents. Additionally, the Catheys pleaded that the easement fails to state where the Driscolls are allowed to cross the strip, and they maintained that although the easement states that the actual easement property used would be determined by "a separate completed agreement as approved by [TLEPOA] after a review of engineering[,]" TLEPOA never executed such a separate agreement. Moreover, the Catheys contended that TLEPOA did not receive consideration from the Driscolls for the easement. The Catheys sought declarations that (1) the easement was obtained as a result of conspiracy and fraud; (2) neither the Catheys nor TLEPOA received any good and valuable consideration for the easement; (3) the easement is ambiguous and vague; (4) TLEPOA's Board of Directors never approved a separate completed agreement; (5) the easement be set aside; (6) alternatively, that the easement "is not in fact an easement at all[;]" and (7) the Driscolls have no right to use the strip for ingress or egress onto the subdivision from the twenty-acre tract or into the subdivision from the twenty-acre tract. In addition, the Catheys sought a permanent injunction prohibiting the Driscolls from crossing or trespassing on the strip, as well as punitive damages.

The Driscolls entered a general denial and asserted a third-party claim against TLEPOA, seeking both monetary damages and declaratory relief. The Driscolls contended that the Catheys "are claiming that [an] unrecorded and unmarked utility easement is now a portion of land owned by [TLEPOA] around the entirety of the subdivision." According to the Driscolls, the restriction asserted by the Catheys "creates an unrecorded and unmarked utility easement 'around the lots' of

the subdivision." The Driscolls also pleaded that the restriction "has been read and interpreted in the usual and customary sense by every surveyor in [Henderson] [C]ounty as being a utility easement around the lots as opposed to" the Catheys' interpretation or TLEPOA's interpretation. The Driscolls pleaded that "[t]his is further shown by the fact that the roads in the subdivision are forty[-]foot wide roads dedicated to, and accepted by, the county." According to the Driscolls, in an abundance of caution, they "asked for and received an easement across any supposed barrier in exchange for deed restricting their land to prevent any commercial operation or heavy residential development adjacent to the subdivision." The Driscolls sought a declaration that the plain meaning of the plat and the restrictions show that no barrier exists or, alternatively, that their easement is "valid and existing."

TLEPOA later brought a counterclaim against the Driscolls, seeking exactly the same declaratory relief against the Driscolls as the Catheys previously requested. TLEPOA also pleaded causes of action for civil conspiracy and trespass and sought a permanent injunction enjoining the Driscolls from crossing or trespassing on the strip. The Driscolls eventually moved to dismiss the Catheys' claims for lack of jurisdiction because the Driscolls provided evidence that the Catheys are not residents of Timber Lake Estates subdivision. The trial court granted the Driscolls' motion and dismissed the Catheys' claims.

TLEPOA filed a no-evidence motion for partial summary judgment against the Driscolls, in which it asserted that the Driscolls had no evidence that a separate completed agreement exists between TLEPOA and the Driscolls as required by the written easement agreement. TLEPOA maintained that the Driscolls cannot prevail on their third-party declaratory judgment action against TLEPOA because there is no evidence that (1) the Driscolls ever presented TLEPOA with an offer stating the location of the easement, and (2) TLEPOA ever entered into a separate completed agreement with the Driscolls. In their response to TLEPOA's no-evidence motion or partial summary judgment, the Driscolls contended that (1) TLEPOA's motion was premature because there had not been an adequate time to complete discovery, and (2) the written easement agreement set the standards for construction and the exact location, as evidenced by the TLEPOA's admission to landowners in the subdivision that the easement exists, and its location, and TLEPOA's attempt to change the location by asking the Driscolls to move it. The trial judge signed an order denying TLEPOA's no-evidence motion for partial summary judgment.

TLEPOA also filed a traditional motion for partial summary judgment against the Driscolls, in which it contended that a letter to the Driscolls from the President of V-TEC Engineering, which had the names of Renda Garner and Carol Driscoll handwritten at the bottom, does not constitute an agreement. In response, the Driscolls asserted that the contract was the written easement itself. The trial judge signed an order denying TLEPOA's traditional motion for partial summary judgment.

Subsequently, TLEPOA filed a hybrid motion for partial summary judgment against the Driscolls, in which TLEPOA again challenged the written easement agreement, contending that the written easement is not a valid contract because it does not include all essential terms, is not supported by consideration, there was no meeting of the minds and consent to the terms of the agreement, the agreement does not contain a legal description of the location of the purported easement, and the agreement contains a condition precedent that never occurred. In response, the Driscolls asserted that TLEPOA's "entire cause of action" is moot because the Driscolls' land sits adjacent to the county road (Crestview), and the Driscolls therefore have legal access from the public road regardless of whether the written easement is valid. The Driscolls asserted that a surveyor's report shows that their property is adjacent to the road, which is a forty-foot road as accepted by Henderson County, and the Henderson County Attorney expressed his legal opinion that because the Driscolls' property is adjacent to the county road, the Driscolls have a legal right of access. According to the Driscolls, it is a "stretch" to now call the utility easement a buffer strip. The court issued a letter ruling denying TLEPOA's hybrid motion for partial summary judgment, stating that "summary judgment is precluded by issues surrounding the notion of a developer reserving something to himself out of a dedicated public roadway."

The Driscolls filed a traditional motion for summary judgment, in which they asserted that they are entitled to judgment as a matter of law on their claims for a declaratory judgment that they have access to Crestview because their land is adjacent to Crestview, and Crestview is a public county road. In their motion, the Driscolls contended that (1) they raised the affirmative defense of mootness as to TLEPOA's claim that they may not access Crestview, and (2) there is no genuine issue of material fact as to whether their land lies adjacent to the county's right of way. The Driscolls asserted that TLEPOA's expert retained surveyor confirmed that the Driscolls' tract borders the public roadway and the buffer strip is inside the roadway, TLEPOA "has paid no tax" on the alleged five-foot barrier to the subdivision, the subdivision plat shows that the road extends

to the border of the subdivision, a previous county commissioner and the County Attorney took the position that the Driscolls border the county road easement, and the buffer strip is not actually along the road. According to the Driscolls, there is no dispute that the road in question is a public road adopted by Henderson County, and "[w]hen a municipality holds a right-of-way easement for a roadway, the landowner who holds the fee simple interest in the land underneath that easement cannot interfere with the public use of the street." The Driscolls contended that they are entitled to summary judgment "because they can prove as a matter of law that their land lies adjacent [to] the County Roadway." According to the Driscolls, access to the county road system is a public right, and they are entitled to judgment that they have the legal right to use the roadway.

The Driscolls attached as summary judgment evidence the affidavit of Carol Driscoll, the survey by TLEPOA's expert (Clark Fincher of Hearn Surveying Associates), an affidavit and e-mail from the Henderson County Attorney (Clinton J. Davis), deeds showing the Driscolls' property abutting the roadway, the special warranty deed by Jackson of the five-foot strip to TLEPOA, a road and bridge report, property tax reports of TLEPOA, and a copy of the plat and the Commissioners Court's acceptance of the plat. In response, TLEPOA argued that genuine issues of material fact as well as a legal question exist and objected to the affidavits of Clinton J. Davis and Carol Driscoll and the road and bridge report. TLEPOA also asserted that the dedication easement in favor of Henderson County "does not confer upon it the right to decide who may violate the barrier strip owned by TLEPOA and enter" Crestview. According to TLEPOA, the five-foot buffer strip "is still land owned by TLEPOA, and only it may grant an easement across its property." TLEPOA maintained that the facts relied upon by the Driscolls are not conclusively proven, including the width of the dedication easement on Crestview. In a supplemental response, TLEPOA argued that the requests for an easement by a former subdivision landowner in 1980, as well as the Driscolls, constitute "adequate summary judgment evidence to support TLEPOA's position that its barrier strip of land . . . cannot be violated without its consent."

In a letter ruling, the trial court informed the parties that the Driscolls' motion for summary judgment was granted and stated as follows: "The Court continues to be of the opinion that a developer may not maintain an interest in a dedicated right-of-way superior to that of the public." The trial judge signed an order granting the Driscolls' motion for summary judgment, noting in its

order that "[t]his judgment finally disposes of all parties and all claims and is appealable."[3] Upon TLEPOA's motion for a ruling on its objections to the Driscolls' summary judgment evidence, the trial judge filed an order indicating that he did not consider (1) the affidavit and email messages of Clinton J. Davis, or (2) the road and bridge report in ruling on the Driscolls' motion for summary judgment.

TLEPOA filed a notice of appeal, stating that it intends to appeal (1) the order denying its no-evidence motion for partial summary judgment, (2) the order denying its traditional motion for partial summary judgment, (3) the letter ruling denying its hybrid motion for partial summary judgment, and (4) the order granting the Driscolls' traditional motion for summary judgment. However, in its brief and reply brief, TLEPOA challenges only the orders (1) granting the Driscolls' traditional motion for summary judgment, and (2) denying its hybrid motion for partial summary judgment.

### SUMMARY JUDGMENT IN FAVOR OF THE DRISCOLLS

In its second issue, TLEPOA contends that the dedication of the street for county maintenance does not "invalidate the existence" of the five-foot strip. As discussed above, this issue was addressed in the Driscolls' traditional motion for summary judgment, and we therefore construe issue two as challenging the trial court's final order granting summary judgment in favor of the Driscolls. Because issue two is dispositive, we address it first. *See* TEX. R. APP. P. 47.1.

#### Standard of Review and Applicable Law

"Declaratory judgments decided by summary judgment are reviewed under the same standards of review that govern summary judgments generally." *Cadle Co. v. Bray*, 264 S.W.3d 205, 210 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2020). We review the trial court's summary judgment de novo, and we view the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

---

[3] *See* *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93, 205 (Tex. 2001) (holding that a judgment is final if it clearly and unequivocally states that it finally disposes of all claims and parties).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). Once the movant establishes a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See **Rhone-Poulenc, Inc. v. Steel***, 997 S.W.2d 217, 223-24 (Tex. 1999); ***City of Houston v. Clear Creek Basin Auth.***, 589 S.W.2d 671, 678-79 (Tex. 1979). The only question is whether an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. ***Nixon v. Mr. Prop. Mgmt.***, 690 S.W.2d 546, 548-49 (Tex. 1985). We must indulge every reasonable inference in favor of the non-movant and resolve any doubts in his favor. *Id*. at 549. We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See **Gulbenkian v. Penn***, 252 S.W.2d 929, 932 (Tex. 1952); ***Palestine Herald-Press Co. v. Zimmer***, 257 S.W.3d 504, 508 (Tex. App.—Tyler 2008, pet. denied).

If the trial court's order granting summary judgment does not specify the grounds relied on for its ruling, we will affirm the summary judgment if any of the theories advanced are meritorious. ***Provident Life & Accident Ins. Co. v. Knott***, 128 S.W.3d 211, 216 (Tex. 2003); ***State Farm Fire & Cas. Co. v. S.S.***, 858 S.W.2d 374, 380 (Tex. 1993). When there has not been a conventional trial on the merits, a judgment is final if it clearly and unequivocally states that it finally disposes of all claims and parties. ***Lehmann v. Har-Con Corp.***, 39 S.W.3d 191, 192-93, 205 (Tex. 2001).

## Analysis

"Texas has long recognized that property abutting a public road has an appurtenant easement of access guaranteeing ingress to and egress from the property." ***State v. Delany***, 197 S.W.3d 297, 299 (Tex. 2006). "[A] landowner purchasing land abutting a public road acquires a right to use that passageway as a means of ingress and egress." ***Smith Cty. v. Thornton***, 726 S.W.2d 2, 3 (Tex. 1986). An easement appurtenant is "[a]n easement created to benefit another tract of land, the use of [the] easement being incident to the ownership of that other tract." BLACK'S LAW DICTIONARY 549 (8th ed. 2004). An easement appurtenant is "an incorporeal right which is attached to, and belongs with, some greater or superior right. . . . It inheres in the land, concerns the premises, and pertains to its enjoyment." ***Forister v. Coleman***, 418 S.W.2d 550, 559 (Tex. App.—Austin 1967, writ ref'd n.r.e.) (quoting 25 Am. Jur. 2d, Easements and Licenses, § 11); *see*

8

*also **DuPuy v. City of Waco***, 396 S.W.2d 103, 109 (Tex. 1965) (holding that "an access right is an easement judicially recognized as appurtenant to tangible property to protect the benefits of private ownership"). "Those who purchase property abutting . . . an existing road have private rights entitling them to use those roads free from obstruction in addition to their rights in common with the general public." ***Shelton v. Kalbow***, 489 S.W.3d 32, 41 n.6 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

TLEOPA asserts that ***De Castillo v. Bargo***, 693 S.W.2d 547 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.), is factually identical and controlling. We disagree. In ***De Castillo***, the city of Laredo approved a plat of an industrial park, filed by a partnership, which included "a provision dedicating for public use a sixty-foot-wide right-of-way comprised of 2.40435 acres and indicated therein as Flecha Lane[]" and "contained a reservation . . . to title in a one-foot strip of land inside and along the entire southern edge of Flecha Lane." ***Id***. at 549. The partnership developed the area and paved Flecha Lane, dividing Flecha Lane from adjacent properties owned by the appellants. ***Id***. The appellants filed suit, seeking a declaration that the reservation of the one-foot strip of land was invalid and sought an injunction enjoining the appellees from interfering with their use of Flecha Lane by crossing the one-foot strip. ***Id***. After a bench trial, the trial court upheld the reservation of the one-foot strip of land and denied injunctive relief. ***Id***. On appeal, the appellants argued that reservation of the one-foot strip of land was void as against public policy and cited to two cases from Kentucky that so held. ***Id***. at 550-51. The Court upheld the reservation of the one-foot strip, concluding that "a border strip can be reserved where there is a legitimate purpose therefor and it is clearly shown on the plat as reserved for private use." ***Id***. at 551. The ***De Castillo*** court pointed out that the reference in the reservation to a repealed ordinance is "of no consequence[,]" concluded that the reservation of a one-foot strip for the private use of the appellees is unambiguous, and held that the reservation of the one-foot strip "is not void as against public policy." ***Id***. at 551-52.

The ***De Castillo*** court discusses two cases from Kentucky, but it does not discuss Texas law, such as the longstanding Texas rule that the owner of property that abuts a public road has an appurtenant easement of access guaranteeing ingress to and egress from the property. Additionally, unlike the appellants in ***De Castillo***, the Driscolls do not seek to have the reservation of a strip by the developer declared invalid as against public policy; rather, the Driscolls assert that they have the right to use Crestview for ingress and egress regardless of the five-foot strip because Crestview

is a public road to which their property lies adjacent. For all these reasons, we conclude that **De Castillo** is inapposite.

The parties agree that the southern border of the Driscolls' tract abuts Crestview, and the summary judgment evidence, including the subdivision's plat and the survey by Hearn Surveying Associates, supports this conclusion. Moreover, the summary judgment evidence demonstrates that the southern border of the Driscolls' tract is adjacent to Crestview, which was dedicated as a county road for public use, including the five-foot strip of which TLEOPA asserts ownership. We conclude that the Driscolls have an easement appurtenant guaranteeing them ingress to and egress from the property via Crestview, the public county road that runs along the southern border of their tract.[4] *See **Delany***, 197 S.W.3d at 299; ***Thornton***, 726 S.W.2d at 3. We further conclude that the fact issues raised by TLEPOA, such as whether the five-foot strip is within the utility easement and whether the road maintenance easement was forty feet wide along the northern border of Crestview, are immaterial to the dispositive issue raised in the Driscolls' motion for summary judgment, *i.e.*, whether the Driscolls have the right to use the public road at their property's southern border for ingress and egress. For all these reasons, the trial court did not err by granting summary judgment in favor of the Driscolls. *See* TEX. R. CIV. P. 166a(c) (providing that the trial court shall render summary judgment if the movant demonstrates that there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law). Accordingly, we overrule issue two. In addition, having concluded that summary judgment in favor of the Driscolls was proper because they have the right to use Crestview for ingress and egress from their adjacent property, we need not address issue one, in which TLEPOA challenges the denial of its motion for partial summary judgment. *See* TEX. R. APP. P. 47.1.

<u>**DISPOSITION**</u>

Having concluded that the trial court did not err by granting summary judgment in favor of the Driscolls, we ***affirm*** the trial court's judgment.

<u>JAMES T. WORTHEN</u>
Chief Justice

---

[4] We do not conclude that the reservation of a strip by the developer was invalid; rather, we merely hold that the Driscolls have an easement appurtenant that permits them ingress and egress at Crestview, regardless of the reserved strip, because their property is adjacent to Crestview, which is a public road. *See **State v. Delany***, 197 S.W.3d 297, 299 (Tex. 2006); ***Smith Cty. v. Thornton***, 726 S.W.2d 2, 3 (Tex. 1986).

Opinion delivered December 14, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 14, 2022**

**NO. 12-22-00064-CV**

**TIMBER LAKE ESTATES PROPERTY OWNERS ASSOCIATION, INC.,**
Appellant
V.
**JAMES DRISCOLL AND CAROL DRISCOLL,**
Appellees

Appeal from the 173rd District Court
of Henderson County, Texas (Tr.Ct.No. CV17-0093-3)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellant, **TIMBER LAKE ESTATES PROPERTY OWNERS ASSOCIATION, INC.**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*